UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JUAN PINEDA, on behalf of himself and all others
similarly situated                                   **Case No. 22-cv-05428(BMC)**

                              Plaintiff,

               v.

BIG CITY REALTY MANAGEMENT, LLC, CFF
CONSULTING INC., 3427 BROADWAY BCR,
LLC, 3440 BROADWAY BCR, LLC, 3660
BROADWAY BCR, LLC, 633 WEST 152 BCR,
LLC, 605 WEST 151 BCR, LLC, 545 EDGECOMBE
BCR, LLC, 535-539 WEST 155 BCR, LLC, 408-412
PINEAPPLE, LLC, 106-108 CONVENT BCR, LLC,
510-512 YELLOW APPLE, LLC, 513 YELLOW
APPLE, LLC, 145 PINEAPPLE LLC, 2363 ACP
PINAPPLE, LLC, 580 ST. NICHOLAS BCR, LLC,
603-607 WEST 139 BCR, LLC, 559 WEST 156 BCR,
LLC, 3750 BROADWAY BCR, LLC, KOBI ZAMIR,
and FERNANDO ALFONSO,

                              Defendants.
------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
(1) CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 23 AND (2) LEAVE TO AMEND THE COMPLAINT**

RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
80 Eighth Avenue, Suite 206
New York, NY  10011
(212) 382-1600

MILLER LAW, PLLC
Meredith R. Miller
167 Madison Avenue, Suite 503
New York, NY  10016
(347) 878-2587

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY ...................................................................................................... 5

STATEMENT OF FACTS ........................................................................................................ 9

ARGUMENT ........................................................................................................................... 17

   I. PLAINTIFF SATISFIES THE REQUIREMENTS UNDER RULE 23(a) FOR CLASS
   CERTIFICATION. .............................................................................................................. 17
     *A. Numerosity is Met under FRCP 23(a)(1).* ..................................................................... 18
     *B. Commonality is Met under FRCP 23(a)(2).* .................................................................. 19
     *C. Typicality is Met under FRCP 23(a)(3).* ...................................................................... 20
     *D. Plaintiff Will Adequately Represent the Class.* ............................................................. 20
     *E. The Rule 23 Plaintiffs are Ascertainable.* ..................................................................... 21

   II. PLAINTIFF SATISFIES THE REQUIREMENTS UNDER RULE 23(b) FOR CLASS
   CERTIFICATION. .............................................................................................................. 22
     *A. Common Questions Predominate.* ................................................................................. 22
     *B. Class Treatment is Superior to Other Alternatives.* ....................................................... 23

   III. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT TO ADD BCR
   LLC AS A DEFENDANT SHOULD BE GRANTED. ........................................................ 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Alharbi v. Miller*, 368 F.Supp.3d 527 (2019) .............................................................. 18

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ......................................... 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)........................... 21

*Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90 Civ. 311,1990 WL 129970 (E.D.N.Y. Aug. 24, 1990) ................................................................... 24

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006) ............................... 20

*Brecher v. Republic of Argentina*, 802 F.3d 303, 304 (2d Cir. 2015).......................... 21

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)............................................................... 20

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.23d 473 (2d Cir. 1995) ................... 18

*Eduoard v. Nikodemo Operating Corp.*, No. 18-cv-5554, 2019 WL 3557687 (E.D.N.Y Aug 2, 2019) ......................................................................................................... 17

*Espinoza v. 953 Associates LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)............................ 20

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................... 24

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29 (2d Cir. 2009) ............... 21

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ...................... 22

*In re Petrobras Securities Litig.*, 862 F.3d 250 (2d Cir. 2017)..................................... 22

*Jenn–Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F.Supp. 591 (E.D. Pa. 1968) ....... 24

*Johnson v. Nextel Comms. Inc.,* 780 F.3d 128 (2d Cir. 2015) ..................................... 19

*Labatte–D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451 (E.D.N.Y. 1996).......................... 20

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .......................... 24

*Moreira v. Sherwood Landscaping Inc.*, No. CV 13-2640, 2015 U.S. Dist. LEXIS 43919 (E.D.N.Y. Mar. 31, 2015) ..................................................................................... 19

*Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)....... 19

*Robidoux v Celani*, 987 F.2d 931 (2d Cir. 1993) ............................................................ 18

*Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125 (E.D.N.Y. 2015) ............................... 6

*Strykers Bay Neighborhood Council, Inc. v. City of New York*, 695 F.Supp. 1531 (S.D.N.Y. 1988) .............................................................................................................. 18

*Tiro v. Public House Investments, LLC*, 288 F.R.D. 272 (S.D.N.Y. 2012) .................................. 24

*Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .................................................... 22

*Wal-Mart Sores, Inc. v. Dukes*, 56 U.S. 338 (2011) ...................................................... 19

*Wilson v. LSB Indus.*, No. 15-cv-7614, 2018 U.S. Dist. LEXIS 138832 (S.D.N.Y. Aug 13, 2018) ...................................................................................................................... 22

## STATUTES

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 1, 24

Fed. R. Civ. P. 23 ...................................................................................................... 1

## OTHER AUTHORITIES

William Rubenstein, 2 *Newberg on Class Actions* §4:69 (5th ed.) ............................... 23

# PRELIMINARY STATEMENT

Plaintiff Juan Pineda ("Plaintiff") commenced this action against Big City Realty Management, LLC ("Big City Realty Mgmt."), CFF Consulting Inc. ("CFF"), 3427 Broadway BCR, LLC, 3440 Broadway BCR, LLC, 3660 Broadway BCR, LLC, 633 West 152 BCR, LLC, 605 West 151 BCR, LLC, 545 Edgecombe BCR, LLC, 535-539 West 155 BCR, LLC, 408-412 Pineapple, LLC, 106-108 Convent BCR, LLC, 510-512 Yellow Apple, LLC, 513 Yellow Apple, LLC, 145 Pineapple LLC, 2363 ACP Pineapple, LLC, 580 ST. Nicholas BCR, LLC, 603-607 West 139 BCR, LLC, 559 West 156 BCR, LLC, 3750 Broadway BCR, LLC, Kobi Zamir ("Zamir"), and Fernando Alfonso ("Alfonso") (collectively, "Defendants"), for wage and related violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). By and through his attorneys, Plaintiff submits this Memorandum of Law in Support of his motion seeking an order (i) certifying the class under Federal Rule of Civil Procedure ("FRCP" or "Rule") 23(a) and (b)(3), for Defendants' violations of the NYLL and the supporting New York Department of Labor regulations; (ii) designating Plaintiff as class representative; and (iii) designating Plaintiff's counsel as Class Counsel pursuant to FRCP 23(g). In addition, Plaintiff seeks leave to amend the Complaint pursuant to FRCP 15(a) by adding Big City Realty LLC ("BCR LLC") as a defendant.

### *Summary of Justification for Amending Complaint.*

Plaintiff seeks leave to amend the Complaint to make only one change: to add BCR LLC as a defendant. Based on Zamir's deposition testimony (on February 23, 2023) and Defendants' most recent, supplemental document production (on April 3, 2023), Plaintiff's counsel is now aware that Zamir, with three investors, owns and controls all of the title-holding entities (already named as defendants herein), and all of the buildings listed in Schedule A to the Complaint,

through BCR LLC. Zamir testified that defendant Big City Realty Mgmt. no longer actively conducts business, as is more fully explained below.

### *Summary of Reasons Why Rule 23 Certification is Appropriate.*

Plaintiff, a former superintendent at Defendants' buildings at 3440 Broadway and 3427 Broadway, claims that, as is relevant to this motion, Defendants systemically violated the NYLL by failing to: (a) pay Plaintiff and similarly situated superintendents, porters and handymen overtime compensation at a rate of one and one-half times their regular rates of pay for each hour worked in excess of the first forty hours each work week; and (b) properly pay Plaintiff and similarly situated superintendents, porters and handymen wages on a timely basis as required by NYLL § 191(1)(a). Plaintiff claims that 50 similarly situated current or former superintendents, porters and handymen ("Rule 23 Plaintiffs") who worked at 23 buildings (the "Big City Buildings") owned and operated by Defendants were subject to the same illegal practices and policies. As discussed in detail below, Defendants' deposition testimony and records overwhelmingly corroborate Plaintiff's allegations that Defendants subjected the Rule 23 Plaintiffs to common violations of the NYLL's frequency-of-pay and overtime requirements.

The Complaint lists buildings in two schedules, Schedule A and Schedule B. The proposed Rule 23 class is limited to workers at the buildings listed in Schedule A (i.e., the Big City Buildings), and is defined as:

> All persons who work or have worked as manual workers, including but not limited to superintendents, porters and handymen, at the buildings listed in Schedule A to the Complaint and/or at other buildings owned or controlled by BCR LLC or Zamir, commencing six years prior to the commencement of this action to the date of final judgment in this matter.[1]

---

[1] As stated in Paragraph 9 of the Complaint, Schedule A was based on research by Plaintiff's counsel prior to filing the Complaint, and it was anticipated that the extent of the portfolio of Big City Buildings would be further ascertained through discovery. Plaintiff's attorneys now understand that there is at least one additional Big City Building during the NYLL limitations period. To the extent that additional buildings were owned or controlled by

Broadly viewed, Plaintiff's class certification motion is based on evidence and testimony *from Defendants themselves*, and takes what might be called a "top-down" approach to proving Plaintiff and the Rule 23 Plaintiffs were subject to uniform wage-related policies and practices. *See Contrera v. Langer*, 278 F.Supp.3d 702, 716 (S.D.N.Y. 2017) (on motion for conditional certification of a FLSA collective, describing "'top-down' method of proof, in which plaintiff provides evidence from a central office or from management levels of an employer showing that the employer had a policy or practice of treating all employees in the class similarly with respect to the allegedly illegal labor law practice."). Defendants' deposition testimony and responses to discovery requests establish uniform employment practices and policies (notably, paying all workers bi-weekly instead of weekly, and paying straight-time hourly rates for overtime work) across the Big City Buildings. While it may be outside the norm for class certification to be based primarily on evidence and testimony directly from Defendants, rather than a smattering of Rule 23 Plaintiffs, this case presents unique circumstances: Defendants have unambiguously admitted that they violated the law and did so uniformly for workers across all Big City Buildings, and Defendants' records corroborate this.

Plaintiff satisfies the requirements for class certification under FRCP 23(a) and 23(b)(3). First, under Rule 23(a), Plaintiff meets the requirement of numerosity, as the Defendants provided a list identifying fifty (50) current and former superintendents, porters and/or handymen at the Big City Buildings during the limitations period. Here, judicial economy is served by avoiding a multiplicity of actions that would individually involve relatively modest damages. This is especially the case because the Rule 23 Plaintiffs are low-wage, immigrant, Spanish-speaking workers that are or were dispersed at Big City Buildings across the City. It is

Zamir or BCR LLC during the NYLL limitations period, Plaintiff intends that the class include the additional buildings' superintendents, porters and handymen.

likely that some workers are unfamiliar with and/or intimidated by the legal system. They may also fear retribution. They are extremely unlikely to commence actions on an individual basis to vindicate their rights. These factors favor adjudication on a class basis.

Second, there are questions of law and fact that are common to all Rule 23 Plaintiffs, including, *inter alia*: (a) whether the Rule 23 Plaintiffs were paid at the overtime rate of one and one-half times their hourly rates of pay for hours they worked in excess of the first forty per week; (b) whether the Rule 23 Plaintiffs are manual workers; (c) whether, through March 21, 2022, the Rule 23 Plaintiffs were paid on a bi-weekly rather than weekly basis. Each of the foregoing questions is susceptible to generalized proof, and they are far more substantial than any issues subject to individual proof.

Third, Plaintiff's claims are typical, if not identical, to the claims of the Rule 23 Plaintiffs as they all arose from the same unlawful pay practices. Fourth and finally, Plaintiff is an adequate class representative. Plaintiff alleges, and Defendants have conceded, that Plaintiff was a manual worker who was paid bi-weekly, and that he worked overtime without having been paid one and one-half times his regular hourly wages. Plaintiff has already proved himself to be credible. His allegations regarding the nature and extent of Defendants' NYLL violations have been corroborated by Defendants' own testimony and records. Plaintiff's interests are clearly consistent with the Rule 23 Plaintiffs. Like Plaintiff, all fifty of the workers are manual laborers who were managed directly by Big City Realty Mgmt. until in or about May 2021. From May 2021, management and supervision was transitioned, in stages, to CFF, but always under defendant Zamir's ultimate control. At all times, a single company, BCR LLC, controlled the Big City Buildings through the title-holding entities, with Zamir serving as BCR LLC's asset manager to run the Big City Buildings. Additionally, Plaintiff is represented by counsel with

experience in wage and hour cases and class action litigation.  Plaintiff's counsel is particularly experienced in representing superintendents, porters and handymen at residential and mixed use buildings in New York City's low income neighborhoods.

Plaintiff also satisfies the requirements of Rule 23(b)(3).  First, Plaintiff's factual allegations are common to all Rule 23 Plaintiffs. The same legal theory predominates over any factual or legal variances among the class members.  Second, because individual litigation for each putative class member would be costly and burdensome for both the workers and the Court, a class action is superior to all other methods of adjudication in this controversy.

Therefore, Plaintiff respectfully requests that this Court certify the proposed class because it meets all the requirements of Rule 23, and designate Plaintiff as class representative and Plaintiff's counsel as Class Counsel pursuant to FRCP 23(g).

## PROCEDURAL HISTORY

**The Complaint and Defendants' Appearance in this Action.**

On September 12, 2022, Plaintiff initiated this action on behalf of himself, individually, and on behalf of all other similarly situated individuals, seeking relief for Defendants' violations of the overtime provisions of the FLSA and various provisions of the NYLL and its supporting regulations.  ECF No. 1. On October 11, 2022, Big City Realty Mgmt., CFF, Zamir, and 3427 Broadway BCR, LLC appeared in this action, through counsel.  ECF No. 14.  On October 23, 2022, the remaining sixteen defendants, including Fernando Alfonso ("Alfonso"), entered their appearances, through counsel.  ECF No. 36.

**Defendants' Answer to the Complaint.**

Defendants filed their Answer to the Complaint on November 3, 2022.  ECF No. 37. Although Defendants denied some of the Complaint's principal allegations, Defendants

responded that they lacked sufficient knowledge and information to form a belief as to the Complaint's allegations that Zamir was the most senior executive of the corporate defendants, and that Alfonso and Zamir jointly determined personnel and wage practices relating to workers at the buildings listed in the Schedules to the Complaint. *See* Answer ¶¶ 46, 48. Defendants' claims to lack knowledge and information regarding their own status and roles as managers of the Big City Buildings' workers (matters obviously ones as to which they have knowledge) are tantamount to admissions. *See Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 134 (E.D.N.Y. 2015). Indeed, as detailed below, at their depositions, Alfonso and Zamir were able to testify extensively about the their roles managing the Big City Buildings and overseeing personnel and wage practices.

**The Initial Conferences.**

The Court held an initial status conference on October 17, 2022 and a Case Management Conference on October 24, 2022. The Court set a deadline of November 11, 2022 for Plaintiff to move for conditional certification of an FLSA collective. Plaintiff decided not to move for conditional certification based on the limited information available to Plaintiff at that time.

**Discovery**.

On December 13, 2022, Plaintiff served Defendants with Combined Interrogatories ("Interrogatories") and Document Requests ("Document Requests"). Thereafter, on December 19, 2022, Plaintiff served Requests for Admission and notices for the depositions of defendants Alfonso and Zamir. The deposition notice to Zamir required him to produce fifteen categories of documents two business days prior to his deposition. Zamir disregarded this request. The deposition notice to Alfonso required him to produce eight categories of documents two business days prior to his deposition. Alfonso disregarded this request. Defendants did not serve any

requests for discovery on Plaintiff. Nor did they request to take Plaintiff's deposition. On February 8, 2023, Defendants provided a partial document production, as well as responses to the Interrogatories and Requests for Admission. A copy of Defendants' Responses to Plaintiff's Combined Interrogatories and Document Requests, dated February 8, 2023, is attached to the accompanying Declaration of Marc A. Rapaport, dated April 14, 2023 ("Rapaport Decl.") as Exhibit A. A copy of Defendants' responses to Plaintiff's Requests for Admission, dated February 8, 2023, is attached to the Rapaport Decl. as Exhibit B. Plaintiff's counsel took the depositions of Alfonso (on February 17, 2023) and Zamir (on February 23, 2023).

Throughout both depositions, it was apparent that Defendants had omitted dozens of important documents from their production, and had omitted extensive information from their Interrogatory responses. For example, the Document Requests included a request that Defendants produce documents relating to "the composition and hierarchy of Defendants' business operations, including but not limited to organizational charts …" Rapaport Decl. Exh. A (Document Requests, No. 6). Defendants purported to respond to the foregoing request by referring to 117 pages of their production that had no relevance to the request. The existence and role of BCR LLC did not come to light until Zamir's deposition on February 23, 2023.

Notwithstanding the documents and information Defendants had failed to produce, by the time the depositions of Alfonso and Zamir were concluded, their testimony, combined with Defendants' partial written discovery responses, made it abundantly clear that: (a) from the beginning of the NYLL limitations period (September 12, 2016) through when BCR LLC "self-managed" the Big City Buildings (approximately mid-2021), Defendant Zamir determined and implemented Defendants' wage and personnel practices across all of the Buildings; and (b) in 2021, when CFF assumed management responsibilities, Defendants Zamir and Alfonso jointly

determined Defendants' wage and personnel practices relating to Plaintiff and all of the Rule 23 Plaintiffs; (c) when Defendants hired Plaintiff in early November 2021, Zamir and Alfonso were, by their own admission, already aware (by virtue of having been defendants in prior wage and hour lawsuits) of their timely pay and overtime obligations to Plaintiff and Rule 23 Plaintiffs; (d) notwithstanding their awareness of the foregoing legal obligations, Defendants, by their own admission, continued to pay Plaintiff and Rule 23 Plaintiffs bi-weekly, rather than weekly, through March 21, 2022, and they also continued the practice of paying Plaintiff and Rule 23 Plaintiffs straight time for overtime; (e) Plaintiff and Rule 23 Plaintiffs are manual workers; and (f) Defendants' foregoing wage and hour practices and policies were uniform across all the Big City Buildings, all having been decided and implemented by Zamir through approximately mid-2021 and then jointly by Zamir and Alfonso.

The Court is already familiar with the difficulties Plaintiff's counsel experienced obtaining from Defendants responsive documents and information that are central to this motion. During the conference held on March 8, 2023, the Court ordered Defendants to produce all remaining discovery by March 15, 2023. ECF No. 30. Thereafter, in a joint letter to the Court dated March 21, 2023, Plaintiff's counsel informed the Court that Defendants had still not provided complete discovery. ECF No. 21. Among other omissions, Defendants did not provide a complete list of their workers employed during the NYLL limitations period at the buildings listed in Schedule A to the Complaint. *Id*. Defendants had not provided any list of workers at the Schedule B buildings. *Id.* Defendants also had not provided the operating agreement of BCR LLC. Defendants disputed the extent of the discovery obligations imposed by the Court during the March 8th conference. *Id*. On March 30, 2023, the Court entered a further order,

requiring Defendants to provide all outstanding discovery and identify all superintendents and porters at the buildings listed in Schedules A and B.

By letter dated April 3, 2023 (the "4/3/23 Letter"), Defendants provided further documents and information. Rapaport Decl. Exh. C (the 4/3/23 Letter). As Plaintiff's counsel had suspected, Defendants had omitted from their initial discovery responses the names of more than one-half of the workers at the Schedule A buildings during the NYLL limitations period. *See* Rapaport Decl. Exh. A (Interrogatory Response No. 12). Defendants' updated list in the 4/3/23 Letter included 50 workers. *Id*. Defendants also identified nine superintendents and porters who worked at the Schedule B buildings during the NYLL limitations period. *Id.*

The 4/3/23 Letter attached the operating agreement of BCR LLC (the "Big City Operating Agreement"). This document provides some clarity regarding Defendants' ownership and management structure, including, *inter alia*, that BCR LLC is the umbrella entity through which four investors exercise ownership and control of all of the Big City Buildings and their respective title-holding entities. Rapaport Decl. Exh. F (BCR LLC's Operating Agreement). The information finally obtained from Defendants in the 4/3/23 Letter leads Plaintiff to propose a class consisting solely of the fifty (50) workers at the Big City Buildings.

## STATEMENT OF FACTS

Like Plaintiff, the Rule 23 Plaintiffs are manual laborers who are or were managed directly by Big City Realty Mgmt. until May 2021. From May 2021, management and supervision was transitioned to CFF and Alfonso, but always under Zamir's ultimate control. As detailed below, both Alfonso and Zamir testified that, across the Big City Buildings, Plaintiff and the Rule 23 Plaintiffs were subject to uniform wage and hour policies and practices.

***Plaintiff.***

From November 2021 through July 2022, Plaintiff worked as a superintendent at 3440 Broadway and 3427 Broadway in Manhattan. Compl., ECF No. 1, ¶ 99; Declaration of Juan Pineda, dated April 10, 2023 ("Pineda Decl.") ¶ 2. Initially, Plaintiff did not reside at the buildings. Compl. ¶ 102. He moved into one of the buildings approximately one month after he began working for Defendants. Compl. ¶ 102. Pineda Decl. ¶¶ 17, 23. Plaintiff was hired and supervised by Alfonso, who he understood to be the manager of buildings owned by Zamir. Pineda Decl. ¶ 3. Plaintiff reported his time separately for each building, received two separate but otherwise identical hiring letters, and received wage statements and paychecks from two title-holding companies. Nevertheless, Plaintiff worked interchangeably at both buildings, as though they were "a single enterprise." Pineda Decl. ¶¶ 9, 10, 11, 17. Defendants' documents show that Plaintiff was paid bi-weekly through March 21, 2022, and was not paid one and one-half times his regularly hourly rate of pay for his overtime hours. Pineda Decl. ¶¶ 16, 23; Rapaport Decl. Exh. B (Responses to Notice to Admit No. 15, 16). At his deposition, Alfonso corroborated the foregoing (to wit, bi-weekly pay and paying straight time for overtime). *See* Rapaport Decl. Exh. D (Deposition Transcript of Fernando Alfonso, February 17, 2023 ("Alfonso Tr."), 31:3 – 31:25; 45:8 - 47:15; 125:3 - 127:3. Alfonso testified that Plaintiff was paid $20.00 for both regular and overtime hours. Alfonso Tr. 59:17 – 59:22.

### *Ownership and Management of the Big City Buildings.*

Defendants' ownership and management structure remained opaque until the final days of discovery. During the deposition of Zamir, it was revealed that, in approximately 2013, four investors, including Zamir, formed BCR LLC, through which the investors jointly owned and controlled the Big City Buildings, which are nominally owned by title-holding entities. *See* Rapaport Decl. Exh. E (Deposition Transcript of Kobi Zamir, February 23, 2023 ("Zamir Tr.")

29:6 – 37:19.  On April 3, 2023, Defendants produced BCR LLC's Operating Agreement, dated August, 19, 2013, which is attached to the Rapaport Decl. as Exh. F.

Defendant Big City Realty Mgmt., which is wholly owned by BCR LLC, was formed to serve as BCR LLC's wholly-owned in-house management company of all of the Big City Buildings.  Big City Realty Mgmt., in turn, had an agreement with Zamir (the "Zamir Employment Agreement"), pursuant to which Zamir (the only investor in New York City) managed the Big City Buildings.

### *Management Prior to May 2021 – Prior to Retaining CFF.*

Until May 2021, Defendant Big City Realty Mgmt. functioned as BCR LLC's in-house management company for all Big City Buildings. Zamir Tr. 30:8 – 30:21; 31:8 – 31:10; 50:12 – 53:18.  Zamir's role in the enterprise, through Zamir Holdings, is "asset manager."  Zamir Tr. 37:8 – 37:19.  Zamir also testified that his role was to "oversee buildings operations."  Zamir Tr. 46:3 – 46:7.  The Zamir Employment Agreement states, "the Company is in the business of self-managing its apartment buildings in New York City" and Zamir's role was to "manage and operate the properties owned by BCR and its affiliates." Rapaport Decl. Exh. G (Zamir Employment Agreement).

Zamir testified that he and a small staff, including a property manager, managed the Big City Buildings from offices they maintained at one of the buildings.  Zamir Tr. 17:17 – 20:8. The property manager, Justin Gruniero, was charged with collecting the time sheets from the workers at the Big City Buildings.  Zamir Tr. 24:14 – 25:3.  Big City Realty Mgmt. used a single payroll company, PrimePay, for payroll for all workers.  Zamir Tr. 22:18-24.  A bookkeeper at Big City Realty Mgmt. provided PrimePay with payroll information for the superintendents, porters and handymen at all of the Big City Buildings every pay period. Zamir Tr. 23:5 – 24:6.  During this

time, before Defendants retained CFF, Zamir hired workers (Zamir Tr. 57:24 – 58:14), determined hourly wages, and assigned workers to work at particular buildings. Zamir Tr. 73:4 – 75:20. Zamir testified to Defendants' practice of using a porter or a superintendent from another building to fill in when a worker elsewhere took time off. Zamir Tr. 26:20 – 27:7. Indeed, Zamir testified that he was the managing agent for each of the Big City Buildings and, before CFF took over, he oversaw the superintendents, porters and handymen of the Big City Buildings. Zamir Tr. 111:14 – 115:18. CFF now manages all the Buildings. *Id.*

**After May 2021 – the Role of CFF and Alfonso.**

In or about May 2021, BCR LLC and Big City Realty Mgmt. began transitioning from self-managing the Big City Buildings by hiring CFF. Zamir testified that the decision to retain CFF was made "in the beginning of 2021." Zamir Tr. 66:17 – 66:22. This occurred in phases beginning in May 2021. *See* Rapaport Decl. Exh. A (Interrogatory Response No. 10).

Today, all of the Big City Buildings are managed by CFF. Alfonso acts as a property manager (Alfonso Tr. 8:22 – 24) through CFF, which he owns and controls. CFF determines the hourly wages of the workers at the Big City Buildings. Zamir Tr. 73:18 – 74:23. However, Zamir and BCR LLC retain final decision making authority over wages. According to Zamir:

> Q. Did [CFF] have free rein to say someone should get more per hour or less per hour?
> A. They do but eventually if we don't like what we see, we have to make changes.

Zamir Tr. 73:24 – 74:5. Zamir further elaborated, "I supervise the management company that manages the buildings and what we like to call the boots on the ground, you know, to make sure that everything runs properly." Zamir Tr. 37:15 – 19.

As to uniformity of personnel policies across the Big City Buildings, Zamir confirmed:

> Q. Was it your understanding that CFF would have uniform policies and procedures across the portfolio?
>
> A. Yeah, if they have their own policies – they changed the payroll company, they wanted to use their own, the one that they've been using for a long time. They made some changes, replaced some supers, and you know, obviously different management company, different needs, I guess.

Zamir Tr. 75:16 – 76:1.

CFF entered into substantially the same form Management Agreement with the title-holding entity of each Big City Building. *See* Rapaport Decl. Exh. H (sample, redacted Management Agreements). For each Big City Building, "in the name and at the expense of the [title holding entity,]" CFF was delegated the duties and powers to "select, pay, and supervise all persons necessary to be employed in order to properly maintain and operate the Premises (including superintendents, handymen,.,) pay the wages of the same. . . ." Management Agreements ¶ 2.1. The substantial similarity of these agreements from building to building shows that CFF was delegated authority over employees across all Big City Buildings.

Alfonso, like Zamir, described uniform personnel and wage practices across the Big City Buildings. For example, Alfonso testified that all superintendents and porters, including Plaintiff, received "substantially the same form" new employee welcome letter as Plaintiff and had "basically the same terms" of employment. Alfonso Tr. 34:4 – 21; 37:23 – 38:5. Defendants' welcome letter dated December 28, 2021 to Pedro Rojas, a porter at Defendants' building at 573 West 159th Street (Rapaport Decl., Exhibit I), is identical in form and substance to the letters that were issued approximately two months earlier to Plaintiff. Pineda Decl. Exh. A.

Alfonso further testified that a single payroll company, Viventium, handles payroll for workers at all of the Big City Buildings. Alfonso Tr. 47:22 – 48:9. In this connection, Defendants produced CFF's September 21, 2021 emails with Viventium regarding running the

initial payroll for workers of seven of the title-holding entities/Buildings. Rapaport Dec. Exh. L. CFF's email to Viventium describes a two-week payroll period (September 20, 2021 to October 3, 2021) for all of these entities/Buildings. *Id.*

Defendants' own testimony establishes that their wages practices (and NYLL violations) were the common across the workers at the Big City Buildings. Indeed, Alfonso testified:

> Q. Is there a super at 3450 Broadway?
> A. Yes.
> Q. Do you handle it just the same way you did for Mr. Pineda and –
> A. Yes.
> Q. You handle payroll –
> A. Yes.
> Q. -- and processing?
> A. Yes, yes.
> Q. Did you provide notices to them, the same way you –
> A. Yes.

Alfonso Tr. 97:2 – 97:14. Defendants' own testimony also establishes their uniform pay practices for superintendents and porters. For example, Alfonso testified that a porter, Pedro Rojas, would report his hours bi-weekly in the same manner as Plaintiff. Alfonso Tr. 70:9 – 72:3.

Defendants produced bi-weekly paystubs and timesheets for R. Peguero ("Peguero"), who worked as a porter of 3427 and 3440 Broadway. Peguero was the only employee other than Plaintiff for whom Defendants provided voluminous discovery, namely, timesheets and paystubs. Therefore, it is particularly noteworthy that Peguero's paystubs and timesheets show that Defendants subjected Peguero to the same wage and hour violations, in precisely the same manner, as Plaintiff. For example, Peguero's paystubs and timesheets for the two week period November 15, 2021 to November 28, 2021 show that he, too, was paid bi-weekly. Rapaport Decl. Exh. J (Peguero paystubs and timesheets). They also show that Defendants paid Peguero straight time for overtime hours. *Id.* Like Plaintiff, Peguero would submit two timesheets every

two weeks (one timesheet per building), which reported an equal number of hours at each building. *Id.* As with Plaintiff, Defendants issued Peguero two checks from two different title-holding companies, which, together with the bi-weekly issuance of pay, masked overtime. *Id.* Furthermore, on March 21, 2022, when Defendants began paying Plaintiff weekly, Defendants simultaneously changed Peguero from bi-weekly to weekly. *Id.* Just as Defendants violated NYLL § 191 across the Big City Buildings, they simultaneously began compliance across the Big City Buildings.

### *Defendants' Wage Violations and their Awareness of their Obligations.*

In light of previous lawsuits, Defendants were aware of their obligations to pay superintendents and other manual workers weekly rather than biweekly, and also to pay overtime for hours over 40 per workweek. Zamir and Alfonso acknowledged as much in their depositions. On May 13, 2021, a wage and hour lawsuit was commenced against Big City Realty Mgmt., Zamir and certain title-holding entities. *See Juan Rosario v. Big City Realty Management, Inc., 106-108 Convent BCR, LLC, 110 Convent BCR, LLC, and Kobi Zamir*, No. 1:21-cv-04336 (SDNY) (the "Rosario Lawsuit"). Zamir testified that he understood the Rosario Lawsuit to be alleging that plaintiff was paid biweekly and was not paid overtime. Zamir Tr. 78:7 – 78:15.

Similarly, on September 20, 2019, a wage and hour lawsuit was commenced against CFF and Alfonso, among others. *See Made v. Broadway 3820 LLC, et al.*, No. 19-cv-08772 (SDNY) (the "Made Lawsuit"). Alfonso testified that the plaintiff in the Made Lawsuit was paid bi-weekly. Alfonso Tr. 28:10 – 28:12. Alfonso also testified that, after the Made Lawsuit, he was aware that he needed to pay time and one-half for overtime, but this change in practice did not get effectuated. Alfonso Tr. 130:15 – 135:17.

As both Zamir and Alfonso testified, Defendants did not change their practice of paying wages bi-weekly, despite – as they admitted – being put on notice of the weekly pay and overtime requirements. Defendants do not dispute that, until March 21, 2022, they paid all superintendents, porters and handymen bi-weekly. They have admitted this practice in their written discovery responses and testimony. Defendants' document production reflects the foregoing practice.

To summarize, Defendants' uniform practice of paying Plaintiff and Rule 23 Plaintiffs bi-weekly through March 21, 2022, and paying straight time for overtime, is irrefutable in light of the following evidence produced by Defendants:

(a) the letters Alfonso provided to Plaintiff on November 1, 2021, at the commencement of Plaintiff's employment, which explicitly state that his wages would be paid bi-weekly. Pineda Decl. Exh. A; Alfonso Tr. 31:16 – 31:25;

(b) the wage statements Defendants provided to Plaintiff, which also show that he was paid bi-weekly, that his pay was not provided to him until five calendar days after the end of each two week pay period, and that he was paid straight time for overtime. Pineda Decl. Exh. B;

(c) the time sheets that Defendants had Pineda submit reported his hours on a bi-weekly basis. Pineda Decl. Exh. C;

(d) Defendants' response to Interrogatory No. 12, identifying all 26 of the then-identified superintendents as having been paid bi-weekly; Rapaport Decl Exh. A. Presumably, all of the newly-added names we received in the 4/3/23 Letter (Rapaport Decl. Exh. C) were also paid bi-weekly;

(e) Defendants' response to Request No. 23 of the Request for Admissions, that in 2020, the superintendent of 3660 Broadway was paid bi-weekly. Rapaport Decl. Exh. B;

(f) Defendants' response to Request No. 32 of the Request for Admissions that, in 2019, they paid all superintendents at the Schedule A buildings (i.e., the Big City Buildings) bi-weekly. *Id.*

(g) Alfonso's testimony that "Pedro," the porter at the two buildings where Plaintiff worked, was also paid bi-weekly. Alfonso Tr. 71: 6 – 71:11;

(h) Defendants' wage statements to Roberto Peguero, showing that, like Plaintiff, he was paid bi-weekly and paid straight time for overtime. Notably, Peguero, like Pedro, is a porter, establishing uniform practices across all job titles. Rapaport Decl. Exh. J; and

(i) a September 21, 2021 email between Rita Nicolaou of CFF and Viventium (the payroll processor), advising that the first payroll for the seven new companies transferred from Big City Mgmt. to CFF for management was for "09.20.21 – 10.03.21 with a check date of 10.08.21." Rapaport Decl. Exh. L.

Despite their failure to pay superintendents and porters one and one-half times their regular hourly wages for hours worked in excess of forty per week, Defendants did not view superintendents and porters as exempt from overtime. Zamir answered affirmatively when he was asked whether superintendents who work at the Big City Buildings are entitled to time-and-a-half for hours worked over 40 in a week.  Zamir Tr. 84:16 – 85:8.  Zamir also testified that there was no clear direction to superintendents about what types of evening work would qualify as overtime entitling them to extra pay. Zamir Tr. 86:20 – 87:5.  Notably, Defendants produced sample NYLL 195.1 wage notices which inform workers that their regular and overtime hourly rates of pay were the same. Rapaport Decl. Exh. K (NYLL 195.1 Notices).  Quite simply, with respect to overtime pay and frequency of pay, Defendants simultaneously attest to both their awareness and violations of their legal obligations and the uniformity of practices across all workers at the Big City Buildings.

## ARGUMENT

### I.  PLAINTIFF SATISFIES THE REQUIREMENTS UNDER RULE 23(a) FOR CLASS CERTIFICATION.

In order to certify the proposed class, Plaintiff must demonstrate that the class and its proposed representatives meet all of the requirements of FRCP 23(a) and (b).  Under Rule 23(a), the requirements are: "(1) 'the class is so numerous that joinder of all members is impracticable' (numerosity); (2) 'there are questions of law or fact common to the class' (commonality); (3) 'the claims or defenses of the representative parties are typical of the claims or defenses of the class" '(typicality); and (4) 'the representative parties will fairly and adequately protect the interests of the class' (adequacy)."  *Eduoard v. Nikodemo Operating Corp.*, No. 18-cv-5554 (BMC), 2019 WL 3557687, *1 (E.D.N.Y Aug 2, 2019).

As discussed below, Plaintiff satisfies each class certification requirement.

### A. Numerosity is Met under FRCP 23(a)(1).

Rule 23(a)(1) requires that the class is "so numerous that joinder of all members is impracticable." Generally, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.23d 473, 483 (2d Cir. 1995) (citations omitted). But because "'there are no strict rules governing the precise number of plaintiffs needed to satisfy the numerosity requirement[,] the focus of the [] inquiry is on the impracticability of joinder.'" *Alharbi v. Miller*, 368 F.Supp.3d 527, 545-6 (2019) (quoting *Strykers Bay Neighborhood Council, Inc. v. City of New York*, 695 F.Supp. 1531, 1538 (S.D.N.Y. 1988)). "Determination of practicability depends on all of the circumstances surrounding a case, not on mere numbers." *Alharbi*, 368 F.Supp.3d at 456 (quoting *Robidoux v Celani*, 987 F.2d 931, 936 (2d Cir. 1993)(citation omitted)). "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.*

Here, although Defendants have not provided any contact information or addresses for the Rule 23 Plaintiffs, Defendants have identified 50 workers that would be part of the class and, therefore, numerosity may be presumed. Rapaport Decl. Exh. C (4/3/23 Letter). Moreover, this is a case where joinder is impracticable. The Rule 23 Plaintiffs are low-wage immigrant workers, the vast majority of whom speak Spanish. *See* Alfonso Tr. 102:5 – 102:8. They are or were dispersed at Defendants' various buildings throughout New York City and are likely unfamiliar with the legal system. They do not have the financial resources to institute individual suits and, in any event, a multiplicity of suits would be a burden on this Court's resources. Indeed, it is "extremely unlikely" that the proposed Rule 23 Plaintiffs would pursue separate

actions. *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014) (finding that few members of NYLL class "could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail"); *see also Moreira v. Sherwood Landscaping Inc.*, No. CV 13-2640, 2015 U.S. Dist. LEXIS 43919, at *25 (E.D.N.Y. Mar. 31, 2015) (geographic dispersion is a factor in considering whether joinder is impracticable). Therefore, the numerosity requirement has been satisfied.

### B. Commonality is Met under FRCP 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This requirement is satisfied if the question of law or fact is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Comms. Inc.,* 780 F.3d 128, 137 (2d Cir. 2015). Thus, "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation" is key to this analysis. *Wal-Mart Sores, Inc. v. Dukes*, 56 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

Here, the commonality requirement is easily satisfied. As detailed above, Defendants' own testimony, discovery responses and document production readily establish that they uniformly applied several unlawful policies to the Rule 23 Plaintiffs as a whole. Specifically, Defendants failed to pay time-and-a-half to Plaintiff and Rule 23 Plaintiffs when they worked more than 40 hours per workweek and failed to pay Plaintiff and Rule 23 Plaintiffs, all of whom are manual workers, on a weekly basis.

Indeed, "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have been repeatedly held to meet the commonality prerequisite." *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) (collecting cases)).

### C. Typicality is Met under FRCP 23(a)(3).

Rule 23(a)(3)'s typicality requirement asks whether "the claims or defenses of the representative Parties are typical of the claims or defenses of the class." Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representatives are typical of class members' claims. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting *Labatte–D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996)). "The commonality and typicality requirements often tend to merge into one another, so that similar considerations animate analysis of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citation and quotation marks omitted). Here, Plaintiff's claims are typical of those of the Rule 23 Plaintiffs because the evidence shows that they were all paid according to the same wage policies – namely, not paid time-and-a-half when they worked more than 40 hours per workweek and not paid on a weekly basis. As outlined above, the documents provided by Defendants, and the testimony of Zamir and Alfonso, establish that workers at all of the Big City Buildings were subject to uniform policies and practices under Big City Realty Mgmt.'s self-management and once management was transferred to CFF.

### D. Plaintiff Will Adequately Represent the Class.

FRCP 23(a)(4) requires finding that "the representative parties will fairly and adequately protect the interests of the class." This provision requires assessing the adequacy of both (1) Plaintiff and (2) Plaintiff's counsel. *See In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d

29, 35 (2d Cir. 2009). A Court must determine (1) whether "plaintiff's interests are antagonistic to the interest of other members of the class" and (2) whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). This requirement "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, there are no known conflicts, let alone ones that are so fundamental that they would impair class certification, and Plaintiff has demonstrated his commitment to the case and representing the Rule 23 Plaintiffs.

Further, Plaintiff is represented by Rapaport Law Firm, PLLC ("Rapaport Law") and Miller Law, PLLC ("Miller Law") (collectively, the "Firms"). The Firms have extensive experience in complex employment cases, including wage and hour collective and class actions. Rapaport Decl. ¶¶ 22, 23, 35. Rapaport Law has significant experience litigating wage and hour cases in the Southern and Eastern District of New York, and Miller Law has served as co-counsel on many of those cases, including the ones that have proceeded on a collective and/or class basis. *Id.* Recently, the Firms have been appointed collective and/or class counsel in several hybrid FLSA/NYLL cases. Rapaport Decl. ¶¶ 24. Rapaport Law's staff is fluent in Spanish and serve as a crucial point of contact with clients in wage and hour cases. Rapaport Decl. ¶¶ 37-44.

### E. The Rule 23 Plaintiffs are Ascertainable.

The Second Circuit has recognized an "implied requirement of ascertainability" which examines "whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Brecher v. Republic of Argentina*, 802 F.3d 303, 304 (2d Cir. 2015). This requirement is satisfied when the class can be

"'defined using objective criteria that establish a membership with definite boundaries.'" *Wilson v. LSB Indus.*, No. 15-cv-7614, 2018 U.S. Dist. LEXIS 138832, at \*13 (S.D.N.Y. Aug 13, 2018) (quoting *In re Petrobras Securities Litig.*, 862 F.3d 250, 257 (2d Cir. 2017)).

Here, the ascertainability requirement is satisfied because Defendants have identified the Rule 23 Plaintiffs by providing a list of names. Rapaport Decl. C (4/3/23 Letter).

## II. PLAINTIFF SATISFIES THE REQUIREMENTS UNDER RULE 23(b) FOR CLASS CERTIFICATION.

Upon satisfaction of FRCP 23(a), plaintiff must satisfy one of the three subsections of FRCP 23(b). Under FRCP 23(b)(3), plaintiff must demonstrate that: (1) common "questions of law or fact" predominate over "any questions affecting only individual members"; and (2) establish that the class action mechanism is "superior to other available methods for the fair and efficient adjudication of the controversy." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006).

### A. Common Questions Predominate.

The Supreme Court has explained:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

Here, predominance is satisfied because the success or failure of Plaintiff's challenge to Defendants' common overtime pay and timely pay policies will turn on this Court's application of common legal principles to a common set of facts. The Court is referred to the common legal questions listed in the "commonality" section, *supra.*

### B. Class Treatment is Superior to Other Alternatives.

Rule 23(b)(3) also requires the Court to find that the class action is "superior to other available methods for fair and efficient adjudication of the litigation" and lists four factors to be considered. As discussed below, each of these factors favors class certification.

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* William Rubenstein, 2 *Newberg on Class Actions* §4:69 (5th ed.). This is not such a lawsuit. On the contrary, it is highly unlikely that individual class members (many of whom speak very limited English and may not be aware of the rights under the FLSA and NYLL) would avail themselves of the legal system and sue defendants for wage and overtime violations.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. Class Counsel is unaware of any such litigation.

Third, Rule 23(b)(3)(C) requires the Court to consider the desirability of "concentrating the litigation of the claims in a particular forum." FRCP 23(b)(3)(C). Here, concentration of all claims in this District is most efficient because the Rule 23 Plaintiffs all worked at Defendants' New York City apartment buildings.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." FRCP 23(b)(3)(D). Plaintiff is not aware of any such difficulties.

Indeed, "[c]ourts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant." *Tiro v. Public House Investments, LLC*, 288 F.R.D. 272, 281 (S.D.N.Y. 2012) (quotations omitted). This is precisely the type of case where class certification is superior to individual adjudication. In sum, the settlement class warrants final certification because all of the requirements of Rule 23 are satisfied.

### III. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT TO ADD BCR LLC AS A DEFENDANT SHOULD BE GRANTED.

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." *Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90 Civ. 311,1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing J*enn–Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F.Supp. 591, 594 (E.D. Pa. 1968)). The court may deny leave to amend for "good reason," which normally involves an analysis of the factors articulated in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. *See, e.g., McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman*, 371 U.S. at 182).

Plaintiff seeks to amend the Complaint simply to add BCR LLC as a defendant. *See* Rapaport Decl. Exhs. M and N. There is no undue delay or bad faith by Plaintiff and there would be no prejudice to Defendants. Plaintiff seeks to amend the Complaint based on information first revealed in Zamir's deposition testimony (on February 23, 2023) and Defendants' supplemental document production of April 3, 2023.

## CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that, pursuant to FRCP 23(a) and (b), this Court certify the proposed class, designate Plaintiff as the class representative, and designate Plaintiff's counsel as Class Counsel pursuant to FRCP 23(g); and, pursuant to FRCP 15(a), grant leave to amend the Complaint.

Dated: New York, New York
      April 14, 2023

Respectfully submitted,

_____/s/_____
Meredith R. Miller
Miller Law, PLLC
167 Madison Avenue, Suite 503
New York, NY 10016
(347) 878-2587
meredith@millerlaw.nyc

_____/s/_____
Marc A. Rapaport
Rapaport Law Firm, PLLC
80 Eighth Avenue, Suite 206
New York, NY 10011
(212) 382-1600
mrapaport@rapaportlaw.com

*Counsel for Plaintiff*