UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JUAN PINEDA, on behalf of himself and all
others similarly situated,

                                    Plaintiff,


                v.


BIG CITY REALTY MANAGEMENT, LLC, CFF          **Case No. 22-cv-05428 (BMC)**
CONSULTING INC., 3427 BROADWAY BCR,
LLC, 3440 BROADWAY BCR, LLC, 3660
BROADWAY BCR, LLC, 633 WEST 152 BCR,
LLC, 605 WEST 151 BCR, LLC, 545 EDGECOMBE
BCR, LLC, 535-539 WEST 155 BCR, LLC, 408-412
PINEAPPLE, LLC, 106-108 CONVENT BCR, LLC,
510-512 YELLOW APPLE, LLC, 513 YELLOW
APPLE, LLC, 145 PINEAPPLE LLC, 2363 ACP
PINAPPLE, LLC, 580 ST. NICHOLAS BCR, LLC,
603-607 WEST 139 BCR, LLC, 559 WEST 156 BCR,
LLC, 3750 BROADWAY BCR, LLC, KOBI ZAMIR,
and FERNANDO ALFONSO,


                                    Defendants.
-----------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR CONDITIONAL CERTIFICATION, LEAVE TO DISTRIBUTE NOTICE,
DISCLOSURE OF CONTACT INFORMATION, AND EQUITABLE TOLLING
PURSUANT TO 29 U.S.C. § 216(b).**

Marc A. Rapaport
RAPAPORT LAW FIRM, PLLC
80 Eighth Avenue, Suite 206
New York, New York 10011
(212) 382-1600; mrapaport@rapaportlaw.com

Meredith R. Miller
MILLER LAW, PLLC
167 Madison Avenue, Suite 503
New York, New York 10016
(347) 878-2587; meredith@millerlaw.nyc

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................................i

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL HISTORY AND PERTINENT FACTS ............................................................3

ARGUMENT ................................................................................................................................4

I.    PLAINTIFF EASILY SATISFIES THE STANDARD FOR CONDITIONAL
CERTIFICATION AND THE BROAD REMEDIAL PURPOSES OF THE FLSA
WARRANT NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS.....................4

A.   EVEN IF A HEIGHTENED POST-DISCOVERY STANDARD OF SCRUTINY IS
APPLIED, PLAINTIFF MAKES THE REQUIRED SHOWING THAT SIMILARLY
SITUATED PLAINTIFFS EXIST. ...........................................................................................6

B. PLAINTIFF AND THE PUTATIVE COLLECTIVE WERE SUBJECT TO UNIFORM
UNLAWFUL PAY PRACTICES AT THE BIG CITY BUILDINGS. ...............................12

II. THE COURT SHOULD ORDER THAT NOTICE AND A REMINDER NOTICE BE
SENT TO POTENTIAL COLLECTIVE ACTION MEMBERS AND ORDER
DEFENDANTS TO PRODUCE COMPLETE CONTACT INFORMATION FOR ALL
PUTATIVE COLLECTIVE ACTION MEMBERS. .................................................................15

III.  THE COURT SHOULD ORDER THE NOTICE PERIOD TO DATE BACK TO THREE
YEARS BEFORE THE FILING OF THE MOTION FOR CLASS CERTIFICATION
PURSUANT TO FRCP 23. .......................................................................................................15

IV.  THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE POTENTIAL
COLLECTIVE MEMBERS' CONTACT INFORMATION.....................................................16

V. THE COURT SHOULD PERMIT PLAINTIFF TO SEND A NOTICE AND A
REMINDER NOTICE VIA MAIL, EMAIL, AND TEXT MESSAGE. .................................16

VI. THE COURT SHOULD PERMIT PLAINTIFF TO DISTRIBUTE THE NOTICES TO
PUTATIVE MEMBERS IN ENGLISH, SPANISH, AND IN ANY OTHER IDENTIFIED
PRIMARY LANGUAGE OF THE PUTATIVE MEMBERS.................................................17

VII. THE COURT SHOULD ORDER EQUITABLE TOLLING OF THE FLSA STATUTE
OF LIMITATIONS. ..................................................................................................................18

CONCLUSION ...........................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Abdulzalieva v. Advanced Domino, Inc.*, No. 21-cv-124, 2021 WL 1648024 (E.D.N.Y. Apr. 26, 2021) ................................................................................................................................ 2

*Chavez v. Tribesmen Group, Inc.*, No. 21-cv-1981, 2021 WL 484344448 (E.D.N.Y. Oct. 14, 2021) ................................................................................................................................ 2

*Contrera v. Langer*, 278 F.Supp.3d 702 (S.D.N.Y. 2017) ............................................... 13

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) .......................................... 4

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ................. 6

*Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-cv-601, 2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016) ................................................................................................................... 13

*Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) ................................................................................................................ 18

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) .................................... 12

*Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360, 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) ............................................................................................................................ 5

*Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. 165 (1989) .................................. 5, 6, 15

*Huggins v. Chestnut Holdings, Inc.*, No. 18-cv-1037, 2020 WL 2787628 (S.D.N.Y. May 29, 2020) ................................................................................................................... 13

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ................................. 5, 18

*Jaworski v. Integra Dev. Group, Inc.*, No. 21-cv-3991, 2021 WL 5592100 (E.D.N.Y. Nov. 29, 2021) ............................................................................................................................ 2

*Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363 (S.D.N.Y. 2014) .................................... 13

*Korenblum v. Citigroup, Inc.*, 195 F.Supp.3d 475 (S.D.N.Y 2016) ........................... 7, 8

*Kucher v. Domino's Pizza, Inc.*, No. 16-cv-2492, 2017 WL 2987214 (S.D.N.Y. Feb. 13, 2017) 13

*Lawrence v. NYC Med. Practice, P.C.*, No. 18-cv-8649, 2021 U.S. Dist. LEXIS 96763 (S.D.N.Y. Sept. 3, 2019) ............................................................................................... 7

*Lee v. ABC Carpet & Home,* 236 F.R.D. 193 (S.D.N.Y. 2006) .................................... 19

*McGlone v. Contract Callers*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012) .........................................18

*Millin v. Brooklyn Born Chocolate, LLC,* No. 19-cv-3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020)..............................................................................................................................17

*Mongiove v. Nate's Corp.*, 15-cv- 1024, 2016 WL 590460 (E.D.N.Y. Feb. 11, 2016) ...............16

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ...........................................................5, 6, 15

*Norris v. Procore LLC*, No. 21-cv-7014, 2022 WL 1205143 (E.D.N.Y. Apr. 21, 2022) .......2, 6, 7

*Panora v. Deenora Corp.*, 19-v-7267, 2020 WL 7246439 (Dec. 8, 2020) ...................................17

*Perez Perez v. Escobar Construction, Inc.*, 540 F.Supp.3d 395 (S.D.N.Y 2021)........................14

*Rafter v. Sign*, No. 21-cv-4588, 2023 U.S. Dist. LEXIS 65354 (E.D.N.Y. Apr. 13, 2023)............7

*Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011) (*rev'd on other grounds*, *Raniere v. Citigroup, Inc.*, 533 Fed. Appx. 11 (2d Cir. 2013) .....................................................5

*Rosa v. Dhillon*, No. 20-cv-3672, 2020 WL 7343071 (E.D.N.Y. Dec. 14, 2020) .........................7

*Rosario v. Valentine Ave. Disc. Store, Co.,* 828 F. Supp. 2d 508 (E.D.N.Y. 2011)......................12

*Sarikaputar v. Veratip Corp.*, No. 17-cv-814, 2018 WL 4109348 (S.D.N.Y. Aug. 29, 2018) .....12

*Shibetti v. Z. Restaurant, Diner and Lounge*, Inc., No. 2021 WL 1738315 (E.D.N.Y. May, 2, 2021)................................................................................................................................5

*Taveras v. PSD Freeport, Inc.*, No. 19-cv-6243, 2021 WL 14059994 (E.D.N.Y. Apr. 14, 2021)14

*Thornburn v. Door Pro Am., Inc.*, No. 18-cv-3839, 2018 U.S. Dist. LEXIS 46164 (E.D.N.Y. Mar. 20, 2018) ..............................................................................................................8

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) .....................12, 13

*Valerio v. RNC Indus., LLC,* 314 F.R.D. 61 (E.D.N.Y. 2016) .....................................................18

*Velasquez v. Digital Page Inc.*, No. 11-CV-3892, 2014 WL 2048425 (E.D.N.Y. May 19, 2014) ......................................................................................................................................17

*Wilson v. Jamaica Service Program for Older Adults, Inc.*, No. 21-cv-1263, 2021 WL 4750098 (E.D.N.Y. Oct. 10, 2021)......................................................................................................2

**STATUTES**

29 U.S.C. § 216(b)...............................................................................................................4, 6

# PRELIMINARY STATEMENT

Plaintiff Juan Pineda ("Plaintiff") commenced this action against Big City Realty Management, LLC ("Big City Realty Mgmt."), CFF Consulting Inc. ("CFF"), 3427 Broadway BCR, LLC, 3440 Broadway BCR, LLC, 3660 Broadway BCR, LLC, 633 West 152 BCR, LLC, 605 West 151 BCR, LLC, 545 Edgecombe BCR, LLC, 535-539 West 155 BCR, LLC, 408-412 Pineapple, LLC, 106-108 Convent BCR, LLC, 510-512 Yellow Apple, LLC, 513 Yellow Apple, LLC, 145 Pineapple LLC, 2363 ACP Pineapple, LLC, 580 ST. Nicholas BCR, LLC, 603-607 West 139 BCR, LLC, 559 West 156 BCR, LLC, 3750 Broadway BCR, LLC, Kobi Zamir ("Zamir"), and Fernando Alfonso ("Alfonso") (collectively, "Defendants"), for wage and related violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Plaintiff claims that similarly situated current or former superintendents, porters and handymen who worked at 23 buildings (the "Big City Buildings")[1] owned and operated by Defendants were subject to the same illegal wage and hour practices and policies, including Defendants' failure to pay wages for overtime work.

On April 14, 2023, Plaintiff moved for (i) class certification of NYLL claims (overtime and untimely pay) pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a) and (b)(3) and (ii) leave to amend the Complaint by adding Big City Realty LLC ("BCR LLC") as a defendant ("FRCP 23 Motion").  *See* Dkt. No. 43.  Defendants did not oppose that portion of the motion that sought to amend the Complaint to add BCR LLC as a defendant.

---

[1] Herein, "Big City Buildings" refers to the buildings listed in Schedule A to the Complaint, and any additional apartment buildings in New York City that were owned or controlled by Zamir or Big City Realty LLC during the FLSA limitations period.

As stated in Paragraph 9 of the Complaint, Schedule A was based on research by Plaintiff's counsel prior to filing the Complaint, and it was anticipated that the extent of the portfolio of Big City Buildings would be further ascertained through discovery.  To the extent that additional buildings were owned or controlled by Zamir or Big City Realty LLC during the FLSA limitations period, Plaintiff intends that the class include the additional buildings' maintenance workers (superintendents, porters and handymen).

On July 28, 2023, the Court vacated a previous order and permitted Plaintiff to move for collective action pursuant to the FLSA (the "7/28/23 Order"). Accordingly, by and through his attorneys, Plaintiff submits this Memorandum of Law in Support of his motion seeking an order: (i) conditionally certifying a FLSA collective action pursuant to 29 U.S.C. § 216(b), (ii) authorizing the distribution of notice, by various means, to potentially affected individuals, (iii) requiring the disclosure of the putative collective members' contact information, and (iv) equitably tolling the statute of limitations from the date Plaintiff submitted the FRCP 23 Motion until the date that the Court resolves this motion for conditional certification.

Plaintiff respectfully requests that the Court grant the motion authorizing notice to be distributed to all persons who work or have worked as superintendents, porters and handymen at the Big City Buildings, beginning three years prior to the commencement of this action to the date of final judgment in this matter. Plaintiff seeks this relief in accordance with the overwhelming precedent in this Circuit, and in a manner entirely consistent with recent decisions from this Court, which grant conditional certification of FLSA collective actions after plaintiff has made "a modest factual showing" that he and potential opt-in plaintiffs were victims of a common policy or plan that violated the law. *See Norris v. Procore LLC*, No. 21-cv-7014, 2022 WL 1205143 *2 (E.D.N.Y. Apr. 21, 2022) (Cogan, J.); *Jaworski v. Integra Dev. Group, Inc.*, No. 21-cv-3991, 2021 WL 5592100 *2 (E.D.N.Y. Nov. 29, 2021) (Cogan, J.); *Chavez v. Tribesmen Group, Inc.*, No. 21-cv-1981, 2021 WL 484344448 *2 (E.D.N.Y. Oct. 14, 2021) (Cogan, J.); *Wilson v. Jamaica Service Program for Older Adults, Inc.*, No. 21-cv-1263, 2021 WL 4750098 *2 (E.D.N.Y. Oct. 10, 2021) (Cogan, J.); *Abdulzalieva v. Advanced Domino, Inc.*, No. 21-cv-124, 2021 WL 1648024 *2 (E.D.N.Y. Apr. 26, 2021) (Cogan, J). Even if a heightened post-discovery standard of scrutiny is applied to the evidence, Plaintiff still readily meets his burden

of showing that the members of the putative collective are similarly situated and qualify for collective treatment.

The distribution of notice to putative collective members is of particular significance here, and equitable tolling is especially warranted, because putative collective members are some of the most vulnerable workers in the United States economy – those that the FLSA was squarely intended to protect. Plaintiff and the putative collective are low-wage immigrant workers, the vast majority of whom speak Spanish as their primary language. *See* Reply Declaration of Marc A. Rapaport in Further Support of Plaintiff's Motion for Class Certification, June 16, 2023 (Dkt. No. 51) ("6/16/23 Rapaport Decl."), Exh. A (Transcript of Deposition of Fernando Alfonso, Feb. 17, 2023 ("Alfonso Tr.") 102:5-102:8)). The putative collective members are or were dispersed at Defendants' various buildings throughout New York City and are likely unfamiliar with the legal system.

## PROCEDURAL HISTORY AND PERTINENT FACTS

On March 8, 2023, at a pre-motion conference, given the passage of a deadline to do so, the Court did not permit Plaintiff to proceed with a motion for conditional certification pursuant to the FLSA. However, the Court allowed Plaintiff to proceed with a FRCP 23 motion for class certification. On April 14, 2023, Plaintiff filed the FRCP 23 Motion, which is currently pending. *See* Dkt. No. 43. In the 7/28/23 Order, after Plaintiff's FRCP 23 Motion was fully submitted, the Court vacated the previous pre-motion order and permitted Plaintiff to move for collective action pursuant to the FLSA. Therefore, by this motion, Plaintiff seeks an order conditionally certifying a FLSA collective action pursuant to 29 U.S.C. § 216(b).

To avoid unnecessary repetition, for a detailed recitation of the procedural history and pertinent facts, Plaintiff respectfully refers the Court to the Memorandum of Law submitted in

support of the FRCP 23 Motion (Dkt. No. 46), beginning at page 5, and the supporting declarations and exhibits referenced therein (Dkt. Nos. 44, 45, 51).[2] Given that the standard for conditional approval of a collective under the FLSA is less stringent than the standard for class certification under FRCP 23, the facts detailed on the FRCP 23 Motion more than support the showing required on this motion.

**ARGUMENT**

I. **PLAINTIFF EASILY SATISFIES THE STANDARD FOR CONDITIONAL CERTIFICATION AND THE BROAD REMEDIAL PURPOSES OF THE FLSA WARRANT NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS.**

"The FLSA requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week. The rate of overtime pay must be 'not less than one and one-half times the regular rate' of the employee's pay." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2121 (2016) (quoting 29 U.S.C. § 207(a)). The FLSA specifically provides that any employer who fails to pay its employees required overtime compensation:

> [s]hall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). The statute also provides for collective actions to recover such damages "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.*

Pursuant to 29 U.S.C. § 216(b), and unlike FRCP 23 class actions, individuals who wish to join a collective action must file with the court a written consent that the action may proceed

---

[2] The declarations submitted in support of the FRCP 23 Motion are expressly incorporated in support of this motion for conditional certification. *See* Plaintiff Juan Pineda's Declaration in Support of His Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23, April 10, 2023 (Dkt No. 44) ("Pineda Decl."); Declaration of Marc A. Rapaport, dated Apr. 14, 2023 (Dkt. No. 45) ("4/14/23 Rapaport Decl."); 6/16/23 Rapaport Decl. (Dkt. No. 51). The entire transcripts of the depositions of Defendants Alfonso and Zamir are Exhibits A and B to the 6/16/23 Rapaport Decl.

on their behalf within the applicable statute of limitations. *See id.* Under the FLSA, an action seeking unpaid minimum wage, overtime, and/or liquidated damages must be commenced within two years, or where the action arises out of a willful violation of the statute, as is alleged here, within three years. 29 U.S.C. § 255(a). "FLSA actions are, consequently, not true representative actions as under Rule 23, but instead those actions brought about by individual employees who affirmatively join a single suit." *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 313 (S.D.N.Y. 2011) (*rev'd on other grounds*, *Raniere v. Citigroup, Inc.*, 533 Fed. Appx. 11 (2d Cir. 2013)). Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). *Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360, 2012 WL 4369746, at *2 (E.D.N.Y. Sept. 24, 2012).

In *Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989), the Supreme Court recognized the importance of collective members receiving "accurate and timely" notice about a pending FLSA action so that they can take action. The Supreme Court noted that the "collective action" mechanism provides individuals with "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* at 170. Even though 29 U.S.C. § 216(b) does not require parties to obtain judicial approval before seeking to advise other similarly-situated persons of their FLSA rights, district courts routinely expedite and facilitate notice to potential opt-in plaintiffs by "conditionally certifying" the § 216(b) collective. *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014); *Shibetti v. Z. Restaurant, Diner and Lounge*, Inc., No. 2021 WL 1738315 *2 (E.D.N.Y. May, 2, 2021) (Cogan, J); *Abdulzalieva,* 2021 WL 1648024, at *5.

Conditional certification furthers the FLSA's "broad remedial purpose," *Braunstein v. East Photo. Labs*, 600 F.2d 335, 336 (2d Cir. 1978); *accord Hoffmann*, 982 F. Supp. at 262-63. It is justified by a court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-LaRoche*, 493 U.S. at 170-71; *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) ("when determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA").

### A. EVEN IF A HEIGHTENED POST-DISCOVERY STANDARD OF SCRUTINY IS APPLIED, PLAINTIFF MAKES THE REQUIRED SHOWING THAT SIMILARLY SITUATED PLAINTIFFS EXIST.

Section 216(b) of the FLSA permits the court to consider an employee's claims on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). The process of determining whether to certify a collective action is a two-step inquiry. *Myers,* 624 F.3d, at 554-55. "At the first step, conditional approval, the court 'mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation has occurred.'" *Norris*, 2022 WL 1205143, at *2 (citing *Myers*, 624 F.3d, at 555) (quotation omitted). "At the second step, 'the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs.'" *Norris*, 2022 WL 1205143, at *2 (citing *Myers*, 624 F.3d, at 555) (quotation omitted).

Notice has not yet been distributed to potential opt-in plaintiffs and this case is, therefore, at the first step of conditional approval, which "requires plaintiff[] to make 'a modest factual showing that [he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" *Norris*, 2022 WL 1205143, at *2 (citing *Myers*, 624 F.3d, at 555)

(quotation omitted). "To show that they are similarly situated, plaintiffs may use pleadings, affidavits, declarations, and other evidence to establish a "'factual nexus'" between their situation and that of the potential opt-in plaintiffs." *Norris*, 2022 WL 1205143, at *2 (citing *Fernandez v. On Time Ready Mix, Inc.*, No. 14-cv-4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quotation omitted)). "Courts have repeatedly emphasized the 'minimal' nature of this burden because 'the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage.'" *Norris*, 2022 WL 1205143, at *2 (citing *Rosa v. Dhillon*, No. 20-cv-3672, 2020 WL 7343071, at *4 (E.D.N.Y. Dec. 14, 2020) (quotations omitted)).

Here, given that discovery in this case has closed, whether a "second stage heightened scrutiny automatically applies" is "open to debate." *Lawrence v. NYC Med. Practice, P.C.*., No. 18-cv-8649, 2021 U.S. Dist. LEXIS 96763, at *10-11 (S.D.N.Y. Sept. 3, 2019) (citing *Korenblum v. Citigroup, Inc.*, 195 F.Supp. 3d 475, 482 (S.D.N.Y 2016)). "[C]ourts have either applied, or expressly remained open to applying, second-stage scrutiny in the first instance when discovery has been completed." *Lawrence*, 2021 U.S. Dist. LEXIS 96763, at *10-11 (collecting cases). Other courts have required a factual showing that is only "slightly higher" than the standard applicable to pre-discovery conditional certification motions. *Rafter v. Sign*, No. 21-cv-4588, 2023 U.S. Dist. LEXIS 65354, *15 (E.D.N.Y. Apr. 13, 2023) ("Here, given that discovery is substantially complete, but opt-in notices have not yet been distributed to potential additional plaintiffs, the Court will apply a slightly higher standard, in which the Court 'will look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence [and arguments] submitted by both parties, albeit with an understanding that the body of evidence is necessarily incomplete.'") (citing *Korenblum*, 195 F.Supp. at 482 (internal quotation omitted)).

Courts in this Circuit take a "'flexible approach to what constitutes efficient use of the notification process.'" *Thornburn v. Door Pro Am., Inc.*, No. 18-cv-3839, 2018 U.S. Dist. LEXIS 46164, *22 (E.D.N.Y. Mar. 20, 2018) (quoting *Korenblum*, 195 F.Supp. at 481).

In this case, there is ample reason why the Court should apply, at most, an intermediate level of scrutiny, as opposed to skipping to the heightened second-step standard. Among other factors suggesting the appropriateness of a more lenient standard, Plaintiff does not have the benefit of discovery from opt-ins, which is particularly impactful here, where other superintendents and porters worked at different buildings, and Defendants did not even disclose the number of such workers until after discovery closed.

As the Court is aware, Plaintiff's efforts to obtain discovery from Defendants regarding workers was a struggle. On the eve of the close of discovery, Defendants had still not disclosed to Plaintiff the number, let alone the names and positions of, superintendents and porters working at the Big City Buildings. On April 3, 2023, after being ordered to pay attorneys' fees to Plaintiff, Defendants belatedly identified superintendents and porters, which notably was approximately double the number of workers they had claimed previously.

Nevertheless, whatever standard this Court applies at this stage of the litigation, the record compellingly supports conditional certification.

As detailed in the record Plaintiff presented in support of the FRCP 23 Motion, during the limitations period, Defendants paid Plaintiff and putative collective members "straight time" for overtime hours. Indeed, Defendants' own documents show that Plaintiff was not paid one and one-half times his regularly hourly rate of pay for his overtime hours. Pineda Decl. ¶¶ 16, 23; 4/14/23 Rapaport Decl. Exh. B (Responses to Notice to Admit No. 15, 16). At his deposition, Alfonso corroborated paying Plaintiff straight time for overtime. *See* 6/16/23 Rapaport Decl.

Exh. A (Alfonso Tr. 45:8 - 47:15; 59:17 – 59:22; 123:12 - 127:3).  He also acknowledged that there were no designated spaces on the timesheets for superintendents to report their evening/overnight hours.  Alfonso Tr. 53:5-55:6.

Significantly, Defendants' wage statements to Roberto Peguero ("Peguero"), a porter of 3427 and 3440 Broadway, show that Peguero, like Plaintiff, was paid straight time for overtime. Peguero's paystubs and timesheets show that Defendants subjected Peguero to the same wage and hour violations, in precisely the same manner, as Plaintiff.  For example, Peguero's paystubs and timesheets for the two-week period November 15, 2021 to November 28, 2021 show that Defendants paid Peguero straight time for overtime hours. 4/14/23 Rapaport Decl. Exh. J (Peguero paystubs and timesheets).  Like Plaintiff, Peguero would submit two timesheets every two weeks (one timesheet per building), which reported an equal number of hours at each building. *Id.*  As with Plaintiff, Defendants issued Peguero two checks from two different title-holding companies, which, together with the bi-weekly issuance of pay, masked overtime.  *Id.* The two paystubs for the foregoing pay period (ending on November 28, 2021) state that Peguero worked 42 hours at each building (totaling 84 hours).  The hours of work set forth on Peguero's time sheets also add up to 84 hours.  *Id.*  But, according to the two wage statements issued to Peguero by Defendants, Peguero was paid his straight-time wages ($15.00 per hour) for all the hours he worked.  *Id.*

Defendants' time-of-hiring wage notices to Plaintiff and Peguero similarly reflect Defendants' practice of paying maintenance workers straight time for overtime.  4/14/23 Rapaport Decl. Exh. K.  Defendants' wage notices to Plaintiff and Peguero expressly state that their respective regular hourly rates of pay were precisely the same as their respective overtime hourly pay rates.  *Id.*

Alfonso also testified that, after another lawsuit alleging overtime violations, he was aware that he needed to pay time and one-half for overtime, but this change in practice did not get effectuated. Alfonso Tr. 130:15 – 135:17. Alfonso acknowledged that, when he provided Plaintiff with the time-of-hire wage notice dated November 1, 2021 (which stated that Plaintiff's regular and overtime rates of pay were the same), he had already been subject to an overtime lawsuit by a superintendent of another building. *Id.*

Moreover, Defendants' own documents and testimony establish that, (1) while the Big City Buildings were "self-managed" by Big City Realty Mgmt. and Zamir, all employees at the Big City Buildings were subject to the same pay practices (see 6/16/23 Rapaport Decl., Exh. B, Transcript of Deposition of Kobi Zamir, Feb. 23, 2023 ("Zamir Tr.") 16:23 – 20:8, 22:18 – 22:24, 24:14 – 25:3, 26:20 – 27:7, 31:8 31:10, 57:24 – 58:14, 73:4 – 75:20, 111:14 – 115:18; Zamir Employment Agreement [4/14/23 Rapaport Decl., Exh. G]); (2) when management was transitioned to CFF and Alfonso, all employees at the Big City Buildings were subject to the same pay practices (see Zamir Tr. 73:18 – 74:23; Alfonso Tr. 8:22 – 24, 34:4 – 34:21, 37:23 – 38:5, 47:22 – 48:9, 97:2 – 97:14); and (3) even when management of Big City Buildings was transferred to CFF and Alfonso, it always remained under defendant Zamir's ultimate control (*see* Zamir Tr. 73:24-74:5, 75:16-76:9).

Alfonso testified, in detail, that he and his assistant personally handled wage practices and procedures for maintenance workers at all of the Big City Buildings. Alfonso personally interviews superintendents and porters and provides them with their time-of-hire LS54 pay notices. Alfonso Tr. 119:17 – 120:12. Alfonso's assistant, Rita, handles payroll for all of the Big City Buildings. Alfonso Tr. 119:15 – 119:16. When superintendents took vacations, porters and/or superintendents of other buildings would fill in for them. Alfonso Tr. 122:13 – 122:25.

When Alfonso assumed management of the Big City Buildings, he issued onboarding letters in "substantially the same form" to all superintendents at the buildings. Alfonso Tr. 33:13 – 34:13. Alfonso specifically admitted that terms of employment were the same across all of the buildings for both superintendents and porters:

> Q.    And did you, with respect to that – with respect to supers only, I'm talking about, or porters, did they all have basically the same terms --
> A.    Yes.
> Q.    -- of employment?
> A.    Yes.

Alfonso Tr. 34:15 – 34:20.

Plaintiff has presented concrete evidence of how Defendants subjected Plaintiff and other maintenance workers to the same unlawful pay practices, including porters, and including employees at other locations (Plaintiff worked at Defendants' buildings at 3440 Broadway and 3427 Broadway). This evidence includes, *inter alia*:

- Defendants' welcome letter dated December 28, 2021 to Pedro Rojas ("Rojas"), a porter at Defendants' building at 573 West 159th Street, is identical in form and substance to the letters that were issued approximately two months earlier to Plaintiff, a super. Pineda Decl. Exh. A; 4/14/23 Rapaport Decl., Exh. I;
- Alfonso testified that Rojas, would report his hours bi-weekly in the same manner as Plaintiff. Alfonso Tr. 70:8 – 72:3;
- Bi-weekly paystubs and timesheets for Peguero, who worked as a porter of 3427 and 3440 Broadway, which show that Defendants subjected Peguero to the same overtime violations, in precisely the same manner (to wit, paying regular hourly wages for hours worked above the first forty hours per week), as Plaintiff. 4/14/23 Rapaport Decl., Exh. J;
- Sample NYLL 195.1 wage notices from Defendants which inform workers that their regular and overtime hourly rates of pay were the same. 4/14/23 Rapaport Decl., Exh. K;
- Alfonso testified that Defendants handled payroll and pay notices the same way for Plaintiff as it did for Defendants' super at 3450 Broadway; Alfonso Tr. 97:2 – 97:14;
- None of the superintendents were reimbursed for tools. Alfonso Tr. 65:3-66:25; and
- In 2019, Defendants paid all superintendents of the Big City Buildings on a bi-weekly basis. 4/14/23 Rapaport Decl. Exh. B (Responses to Notice to Admit No. 15, 16).

In summary, based on Defendants' own testimony and documentary evidence, Plaintiff has established a common policy to not pay superintendents and porters premium overtime pay, warranting an order granting conditional certification of an FLSA collective action.

## B. PLAINTIFF AND THE PUTATIVE COLLECTIVE WERE SUBJECT TO UNIFORM UNLAWFUL PAY PRACTICES AT THE BIG CITY BUILDINGS.

"When a proposed collective action encompasses employees of multiple businesses or locations, the Court 'must determine which [locations or businesses] had employees that were 'similarly situated' with regard to the allegedly unlawful overtime policies' before facilitating notice to those employees." *Sarikaputar v. Veratip Corp.*, No. 17-cv-814, 2018 WL 4109348, at *4 (S.D.N.Y. Aug. 29, 2018) (quoting *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557 (S.D.N.Y. 2013)). To make this determination, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Trinidad*, 962 F. Supp. 2d at 558 (citing *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)); *see also, e.g.*, *Rosario v. Valentine Ave. Disc. Store, Co.,* 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011) (finding that, where plaintiffs provided some evidence of common ownership and control of all twenty-seven of defendant's stores, as well as evidence that the same wage and hour violation had occurred consistently at eight of defendant's stores, notice was appropriate to all of the stores).

Indeed, "[c]ourts in this Circuit frequently authorize notice to employees of . . . locations where the named plaintiffs did not work, even in the absence of any declaration by an employee who worked at that location. Such notice is appropriate so 'long as there is sufficient evidence that . . . employees [at the other locations] were subject to the same allegedly unlawful policies.'"

*Kucher v. Domino's Pizza, Inc.*, No. 16-cv-2492, 2017 WL 2987214, at \*6 (S.D.N.Y. Feb. 13, 2017) (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 370–71 (S.D.N.Y. 2014)). A plaintiff "need not plead the exact same fact scenario at each of the [locations] where he worked in order to establish a common policy or plan." *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-cv-601, 2016 WL 6561302, at \*8 (S.D.N.Y. Nov. 4, 2016) (finding that the sworn allegation of a single declarant who worked at five of sixty commonly-owned restaurants in New York in a five-year period provided a sufficient "factual nexus" between plaintiff and the potential opt-in plaintiffs at all sixty restaurants to support conditional certification by alleging that employees were required to work off-the-clock, beyond their regularly scheduled shift, at all five locations); *see also Trinidad*, 962 F. Supp. 2d at 558 (noting that, where declarants worked at ten of thirty-three commonly owned restaurants in New York, the court would ask whether it could "extrapolate from [evidence of violations at] these stores to other . . . stores, based on whether there [were] sufficient allegations of a common policy of violating overtimes rules that extends to other stores").

In *Huggins v. Chestnut Holdings, Inc.*, No. 18-cv-1037, 2020 WL 2787628, at \*1 (S.D.N.Y. May 29, 2020), the court conditionally certified a collective of superintendents who worked at all of defendants' buildings. The court held that the declarations of two superintendents were "enough to indicate that there is a broader class of building superintendents employed by Defendants who may have been subject to the same alleged FLSA violations." *Id.* Moreover, in *Contrera v. Langer*, 278 F.Supp.3d 702, 718 (S.D.N.Y. 2017), based on documentary evidence from defendants, the court conditionally certified a collective of superintendents, porters and handymen who worked at multiple building locations but all reported to the same management office and were subject to unform policies. *See also Liz v. 5*

*Tellers Assoc., L.P.*, No. 20-cv-212, 2021 WL 1224518 (E.D.N.Y. Apr. 1, 2021) (conditionally certifying a collective of superintendents that worked at defendants' buildings throughout the Bronx).

Indeed, in *Contrera*, the court described a "top down" approach of proof that employees are "similarly situated" – that is, one based on "evidence from a central office or from management levels of an employer showing the employer had a policy or practice of treating all employees in the class similarly with respect to the allegedly illegal labor practice." *Contrera*, 278 F.Supp.3d at 716; *see also Perez Perez v. Escobar Construction, Inc.*, 540 F.Supp.3d 395, 405 (S.D.N.Y 2021); *Taveras v. PSD Freeport, Inc.*, No. 19-cv-6243, 2021 WL 14059994 *4, n.8 (E.D.N.Y. Apr. 14, 2021). Similarly, here, Plaintiff presents evidence from Defendants themselves to establish that Defendants commonly required superintendents, porters and other manual workers, to work more than forty hours and Defendants did not compensate those workers at an overtime rate of pay for all hours worked over forty. Despite working at different building locations, superintendents, porters, handymen were all centrally managed and under the ultimate control of Big City Realty Mgmt. and/or Zamir.

As stated above, Alfonso expressly testified that superintendents and porters had basically the same terms of employment (Alfonso Tr. 34:15 – 34:21), and he further testified in detail to how payroll and wages were handled in a unified manner for workers at all of the Big City Buildings.

Therefore, the Court should permit Plaintiff to distribute notice to all persons who work or have worked as superintendents, porters and handymen at Big City Buildings.

In sum, the evidence submitted by Plaintiff in support of the FRCP 23 Motion very easily satisfies his burden on this motion. Plaintiff's FLSA overtime claim and those of the putative collective are sufficiently similarly situated to justify issuing notice.

## II. THE COURT SHOULD ORDER THAT NOTICE AND A REMINDER NOTICE BE SENT TO POTENTIAL COLLECTIVE ACTION MEMBERS AND ORDER DEFENDANTS TO PRODUCE COMPLETE CONTACT INFORMATION FOR ALL PUTATIVE COLLECTIVE ACTION MEMBERS.

Based on the foregoing, the Court should authorize Plaintiff to disseminate notice to putative members of the collective. *See Myers*, 624 F.3d at 555. A proposed Notice of Lawsuit and Consent to Join form ("Notice") are attached as **Exhibit 1** to the Declaration of Marc Rapaport, dated Aug. 3, 2023 ("8/3/23 Rapaport Decl."). This Notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. This Notice further explains the responsibilities that opt-in plaintiffs incur when joining the lawsuit including, *inter alia*, providing information relating to their employment with Defendants, appearing for a deposition, or testifying in court, and also unequivocally indicates, in numerous sections, that the recipient of the Notice is not necessarily entitled to monetary recovery. The Notice is "timely, accurate, and informative," thus meeting all legal requirements. *See Hoffmann-LaRoche, Inc.*, 493 U.S. at 172. The proposed Notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should therefore be adopted.

## III. THE COURT SHOULD ORDER THE NOTICE PERIOD TO DATE BACK TO THREE YEARS BEFORE THE FILING OF THE MOTION FOR CLASS CERTIFICATION PURSUANT TO FRCP 23.

Plaintiff is aware that this Court has clearly held that notice of an FLSA collective should only be for three years (and not six years) from the date the motion is made. *Chavez*, 2021 WL

4844448, at *3.  In light of the equitable tolling argument, detailed below, Plaintiff requests that the notice period go back three years from the date of the FRCP 23 Motion, and not the present filing.

## IV.  THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE POTENTIAL COLLECTIVE MEMBERS' CONTACT INFORMATION.

Accordingly, in addition to certifying the collective action, Plaintiff requests that the Court order Defendants to produce the following within fourteen days of its Order: the full names, addresses, phone number, email addresses, job titles and primary languages for all manual workers employed by Defendants at the Big City Buildings at any time during the three years preceding the filing of the FRCP 23 Motion.  Plaintiff further requests that Defendants be ordered to provide the data in a computer-readable format, to expedite the mailing of notice. *Chavez*, 2021 WL 4844448, at *5 (directing defendants to produce information to facilitate notice).

## V. THE COURT SHOULD PERMIT PLAINTIFF TO SEND A NOTICE AND A REMINDER NOTICE VIA MAIL, EMAIL, AND TEXT MESSAGE.

With respect to the distribution of notice, Plaintiff additionally requests that the Court allow him to send reminder notices to the potential opt-in plaintiffs thirty days after the original mailing of notice and opt-in forms in order to remind any potential collective members who have not yet opted into the case of the impending deadline for their response, which would be sixty days after sending the original notice.  Because reminder notices help to "facilitate[] the remedial goals of the FLSA by protecting potential class members against their claims being extinguished by the running limitations period," the Court should authorize Plaintiff to send a reminder notice. *Mongiove v. Nate's Corp.*, 15-cv- 1024, 2016 WL 590460, at *7 (E.D.N.Y. Feb. 11, 2016); *Chavez*, 2021 WL 4844448, at *5 (adopting proposed reminder notice). A proposed Reminder

Notice is attached as **Exhibit 2** to the 8/3/23 Rapaport Decl.

Moreover, Plaintiff should be permitted to send the original and reminder notices via email, and also to send a text message and reminder text message containing a link to the notices on the website of Plaintiff's counsel, on the grounds that many potential plaintiffs may have changed residences since their employment with Defendants ended. This Court has allowed distribution of notice by e-mail and text message. *See Panora v. Deenora Corp.*, 19-v-7267, 2020 WL 7246439, at * 5 (Dec. 8, 2020). This method of distribution aligns with the broad remedial purpose of the FLSA. *See, e.g., Velasquez v. Digital Page Inc.*, No. 11-CV-3892 (LDW) (AKT), 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (finding it proper for courts in collective actions to order discovery of telephone numbers and email addresses of potential collective members) (collecting cases); *Millin v. Brooklyn Born Chocolate, LLC,* No. 19-cv-3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("The historical reliance of some courts on mailing notices is no longer appropriate given the migratory nature of workers, whether locally or otherwise, and is inconsistent with current methods of communication. Simply put, email, text message and other electronic means of communication is far more prevalent than snail mail, whether fortunately or not.")

A proposed subject line and body of the email, which shall contain the FLSA collective action notice (and reminder notice, when appropriate) as an email attachment, is attached as **Exhibit 3** to the 8/3/23 Rapaport Decl. A proposed text message is attached as **Exhibit 4** to the 8/3/23 Rapaport Decl.

### VI. THE COURT SHOULD PERMIT PLAINTIFF TO DISTRIBUTE THE NOTICES TO PUTATIVE MEMBERS IN ENGLISH, SPANISH, AND IN ANY OTHER IDENTIFIED PRIMARY LANGUAGE OF THE PUTATIVE MEMBERS.

Plaintiff requests that all notices be distributed in English, Spanish, and any other language identified by Defendants. Alfonso testified that many of the members of the putative collective speak Spanish. 6/16/23 Rapaport Decl., Exh. A (Alfonso Tr. 102:5-102:8). Therefore, Plaintiff requests permission to have a certified translation made of the original notice, reminder notice, and text message and email to be sent to each putative opt-in member in Spanish and in any additional language that Defendants identify as the primary language of any putative opt-in. Generally, "courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Valerio v. RNC Indus., LLC,* 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (collecting cases).

## VII. THE COURT SHOULD ORDER EQUITABLE TOLLING OF THE FLSA STATUTE OF LIMITATIONS.

Should the Court grant the instant motion, Plaintiff respectfully requests that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled from the date of filing of the FRCP 23 Motion until such time as the Court resolves this motion. District courts in this Circuit have increasingly granted requests for equitable tolling from the date of the motion to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of such cases. *See, e.g., Jackson, 298* F.R.D. at 170-71 (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification); *McGlone v. Contract Callers*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations during pendency of conditional certification motion).

Here, Plaintiff requests that the tolling begin on the date that Plaintiff made the Rule 23 Motion (4/14/23) because, had he been able to make the instant motion then, Plaintiff would

have filed it together with the Rule 23 Motion, as was requested in his pre-motion letter. *See, e.g., Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 199–200 (S.D.N.Y. 2006) (equitable tolling where "the Court directed Plaintiff after he had filed his complaint to postpone any motions for collective or class action until after its decision regarding summary judgment").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

(1)     Conditionally certifying this case as a collective action with respect to all persons who work or have worked as manual workers, including but not limited to superintendents, porters and handymen, at the buildings listed in Schedule A to the Complaint and/or at other buildings owned or controlled by BCR LLC or Zamir, commencing three years prior to the commencement of this action to the date of final judgment in this matter (from September 12, 2019 to present);

(2)     Requiring Defendants, within fourteen days of the Court's Order, to produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, work locations, dates of employment, and primary languages spoken of all potential collective action members;

(3)     Permitting Plaintiff to disseminate notice of this action in the form attached to the 8/3/23 Rapaport Decl. as **Exhibit 1** (Notice), **Exhibit 2** (Reminder Notice), **Exhibit 3** (email notice) and **Exhibit 4** (text message) in English, Spanish, and any other language identified by Defendants, and permitting a sixty-day opt-in period, to all workers at Big City Buildings from September 12, 2019 to present;

(4)     Tolling the FLSA statute of limitations from the date of filing of the FRCP 23

        Motion (4/14/23), until such time as the Court resolves this motion; and

(5)     Granting any other further relief that the Court deems just and proper.


Dated: New York, New York
       August 3, 2023

                                                Respectfully submitted,

                                                RAPAPORT LAW FIRM, PLLC
                                                80 Eighth Avenue, Suite 206
                                                New York, New York 10011
                                                Phone: (212) 382-1600
                                                Email: mrapaport@rapaportlaw.com



                                                By: _____/s/_____
                                                    Marc A. Rapaport



                                                MILLER LAW, PLLC
                                                167 Madison Avenue, Suite 503
                                                New York, New York 10016
                                                Phone: (347) 878-2587
                                                Email: meredith@millerlaw.nyc



                                                By: _____/s/_____
                                                    Meredith R. Miller


                                                *Attorneys for Plaintiff*