1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2
     ------------------------------x
3                                      22-CV-5428(BMC)
     JUAN PINEDA,
4                                      United States Courthouse
             Plaintiff,                Brooklyn, New York
5
             – versus –                March 8, 2023
6                                      3:45 p.m.
     BIG CITY REALTY MANAGEMENT,
7    LLC ET AL.,

8
             Defendants.
9    ------------------------------x

10          TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
                 BEFORE THE HONORABLE BRIAN M. COGAN
11             UNITED STATES SENIOR DISTRICT JUDGE
                      VIA VIDEOCONFERENCE
12   APPEARANCES

13   Attorney for Plaintiff:  RAPAPORT LAW FIRM, PLLC
                              80 Eighth Avenue, Suite 206
14                            New York, New York 10011
                              BY:  MARC A. RAPAPORT, ESQ.
15                                 –and–
                              MILLER LAW PLLC
16                            167 Madison Ave, Suite 503
                              New York, New York 10016
17                            BY:  MEREDITH R. MILLER, ESQ.

18   Attorney for Defendant:  THE LAW OFFICES OF PETER METIS, LLC
                              46 Trinity Place, 5th Floor
19                            New York, New York 10006
                              BY:  PETER METIS, ESQ.
20
     Court Reporter:          Georgette K. Betts, RPR, FCRR, CCR
21                            Phone:  (718)804-2777
                              Fax:    (718)804-2795
22                            Email:  Georgetteb25@gmail.com

23   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
24

25

PROCEEDINGS

1          (In open court; all present via videoconference.)

2          THE COURTROOM DEPUTY:  Case number 22-CV-5428.

3     Pineda versus Big City Realty Management LLC, et al.

4          Will counsel please state their name for the record

5     beginning with plaintiff's counsel.

6          MR. RAPAPORT:  Good afternoon, your Honor.  This is

7     Marc Rapaport with the Rapaport Law Firm as co-counsel for the

8     plaintiff.

9          MS. MILLER:  Good afternoon, your Honor.  Meredith

10    Miller, co-counsel for the plaintiffs or plaintiff.

11         MR. METIS:  Peter Metis, Law Offices of Peter Metis

12    counsel for the defendants, your Honor.

13         THE COURT:  Let me start by saying plaintiff's

14    counsel seems to be under a misimpression.  We're not having a

15    collective action in this case.  I set a deadline, I got a

16    letter from plaintiff's counsel saying we are not going to

17    move for a collective action, that date has long passed and I

18    have not been asked to reinstate it, which I wouldn't if I

19    were asked, so whatever these missing documents have to do

20    with, it's not that.  Okay?

21         Can I just ask, Mr. Rapaport, why are you telling me

22    that you need these documents for a collective action when you

23    sent me a letter saying I'm not going to move for a collective

24    action?

25         MR. RAPAPORT:  When we sent that letter, your Honor,

PROCEEDINGS

1    we had minimal information.  We could not have brought a

2    collective action as a defense.

3            THE COURT:  Right, that's why you've got the class

4    action remedy, which you can still pursue if you want to,

5    okay.  That's fine.

6            Second, I need to ask defense counsel, why are we

7    discovering documents that should have been produced at the

8    beginning of the case late in the case?

9            MR. METIS:  Well, your Honor, I mean, I think we've

10   produced what we could produce based on what the plaintiff's

11   allegations were.  There was no class action yet, you know,

12   they -- they -- they at some point said they wanted to

13   produce -- you know, resolve the case and then they at the

14   last minute sent discovery documents out and we tried to

15   produce what we could based on what the, you know, the

16   plaintiff's sole claims were and we did.  And we produced

17   other things since then, but that's the extent of the

18   production.  It's not -- you know, we haven't produced for 23

19   buildings, you know, 24 supers, we haven't produced that, no.

20           THE COURT:  The question is, did the document

21   requests that you were served with request those documents?

22           MR. METIS:  Well, I think they requested some of the

23   documents, but we felt that they were -- we objected to them,

24   felt that they were too broad and, you know, didn't bear on

25   anything in this case.

PROCEEDINGS

1    THE COURT:  Okay.  The complaint plainly alleged a

2  class action, so we knew there was a class action.  Let me ask

3  plaintiff's counsel, when were the documents, for example, the

4  policies and procedures regarding wages to superintendents and

5  porters, when were those served?

6    MR. RAPAPORT:  They were served timely, your Honor.

7  I'm going to give you the exact date in one minute, because I

8  do have that.  We served our notices on December 13th.  We

9  served a notice to produce and interrogatories and the

10  responses were served in -- we got defendant's production on

11  February 10th and then we proceeded very quickly with two

12  depositions of the individual defendants, and it became

13  apparent during those two depositions that the basic documents

14  were not produced for -- by way of example, which counsel did

15  to his credit emailed to us yesterday the management

16  agreements for the buildings.  There is one management

17  company, a group of owners, we received three of those late

18  yesterday.  But in terms of our demand, we did not delay.

19    THE COURT:  Is there any question as to whether your

20  demand encompassed all the buildings?

21    MR. RAPAPORT:  We made that very clear.  Our demands

22  referred to the schedules of buildings that are attached to

23  the complaint.  There's a Schedule A and Schedule B, I believe

24  those are approximately 30 buildings more or less.  The

25  demands were very specific in that regard.

PROCEEDINGS

1      THE COURT: So, Mr. Metis, tell me again -- look,

2  try to find a way to persuade me I shouldn't impose a

3  sanction.  I'm not understanding it because --

4      MR. METIS:  Well, your Honor --

5      THE COURT:  Because --

6      MR. METIS:  -- I think what happened was, you know,

7  they -- plaintiff's counsel came to me and said, we're not

8  going to pursue a collective action, let's resolve the matter.

9  We tried to resolve the matter, then they sent me in -- you

10  know, they waited a month and a half to send me discovery

11  documents and said no, you know what?  We're not going to

12  resolve the matter -- or they actually never said that, they

13  just sent discovery documents out.

14      Those did get delayed on my end, but we eventually

15  answered them and they -- you know, they knew that they were

16  late.  They didn't -- they didn't request anything, they

17  didn't object to my objections.  There was nothing that was

18  said.  I said, here are the documents I have, they took them,

19  they did depositions.  They never said that no, we're

20  insisting on going forward with additional documents.  So, you

21  know, that was -- you know, that's the way the responses ended

22  up.  It would have been -- you know, we have -- you know, we

23  just the totality of this plaintiff that was produced.

24      THE COURT:  I just don't understand whenever anyone

25  says to each other, if you've got a court order in place that

1  says complete discovery and you get served with a document

2  demand, I mean, okay, you objected.  Did you object to the

3  documents that you're now producing?

4          MR. METIS:  I don't believe so, no.  I produced --

5  the only documents he came back to me -- pre --

6  post-depositions and requested that I get to him before the

7  close of discovery were the management agreements.  I told him

8  they are all the same, I would get him three of them.  We

9  agreed I would produce three and we would stipulate that

10  they're all pretty much exactly for every building they are

11  the same, and that's all.

12          I further -- I objected to the Schedule B buildings

13  because those are not defendants in this action, so I didn't

14  feel I needed to produce discovery for entities that aren't

15  even in this case.  So that was the extent of the production.

16          THE COURT:  Mr. Rapaport, when you didn't get

17  management agreements for the other entity or the documents

18  that you claimed to have discovered had not been produced to

19  you at the depositions, why didn't you do something before the

20  depositions?  You knew you didn't have other management

21  agreements, right?

22          MR. RAPAPORT:  So we got the documents, your Honor,

23  literally within, I'm going to say, five or six days before

24  the depositions and we had a looming deadline.  And our depo

25  notices called for -- they were duces tecum, called for

1    defendants to bring those.  We do have -- with regards to the

2    most important documents, the management agreements, we do

3    have them as of yesterday.

4          Should we have been -- put more pressure on

5    defendant, well, our goal was to work with the time period we

6    had, and we did the depositions we needed, but your Honor is

7    correct, we could have brought this to the Court, we chose to

8    move forward and we actually did a lot of discovery in the

9    intervening period.

10          THE COURT:  What do you need now that you still

11   don't have?

12          MR. RAPAPORT:  We need a list of the supers and

13   porters that worked at the Schedule B buildings and that was a

14   rog, it wasn't responded to.  The individual defendant

15   Mr. Alfonso said he would provide it, we put a blank line in

16   the transcript for him to list those.

17          We need the communications between the individual

18   defendants regarding wage and hour practices.  One of the

19   defendants, Mr. Zamir testified that such communications

20   existed, that he had not searched his emails or text messages

21   and Mr. Metis said he would take that request under

22   advisement.  We still do not have them now.  Those two sets of

23   items and information would be important for us, but we, like

24   I said, your Honor, in a short period of time made -- how to

25   manage to catch up.  Those are the items.

PROCEEDINGS

1    THE COURT:  Mr. Metis, I don't see how you couldn't

2    produce the emails talking about wage policies.  Those are

3    fundamental, right?

4    MR. METIS:  You know, I don't even know if they

5    exist, your Honor.  It first came to -- Mr. Zamir testified

6    that there may be some at his deposition, that was the first

7    I've ever heard of them as to, you know, specific wage

8    policies.  I don't -- I had him go back and so far he hasn't

9    found any.  So, you know, I understand that that came up in

10   the deposition and that may sort of resurface something, but

11   as far as I know, there are none.  There were none before.  As

12   we sit here today, I don't know of any, but I did tell him

13   he's got to do a thorough search, which he's in the process of

14   doing, but I haven't received back any specific emails in that

15   regard.

16   THE COURT:  Let me suggest to you, it's not your

17   client who ought to be doing the searching, it's you.  Because

18   clients sometimes find something bad and so they just kind of

19   leave it there.

20   MR. METIS:  Well, your Honor, we can do -- we can

21   search.  I can do some search on the email, but he knows what

22   they are and he knows who he has and whatnot.  You know, I'll

23   do the best I can, but I haven't seen anything from what I've

24   been shown that's relevant to whether or not Kobi and --

25   Mr. Zamir and Mr. Alfonso had any specific emails regarding

PROCEEDINGS

1   wage claims or wage policies.

2           THE COURT:  So you're going to complete this search

3   and turn over anything else that was asked for at the

4   depositions that has not been produced within a week, right?

5           MR. METIS:  Well, I don't have a list of what was

6   asked at the deposition.

7           THE COURT:  It's in his letter.  It's in his letter

8   to me.  It's in the joint letter saying here's what we're

9   missing.

10          MR. METIS:  Well, I mean other than that that's

11  fine.  I can make a -- you know, I can propound those.

12          THE COURT:  Okay.  Give him that in a week.

13          Mr. Rapaport, once you get those in a week, if

14  there's anything, do you need anything else?

15          MR. RAPAPORT:  I believe that's it, your Honor.

16          THE COURT:  Okay.

17          MR. RAPAPORT:  And the list of supers at the

18  Schedule B buildings, supers and porters.

19          THE COURT:  Right.  So he's going to get you all

20  that stuff in a week and they'll be no more discovery after

21  that and we'll just go to trial.

22          Are you going to move for class certs, or you don't

23  know yet?

24          MR. RAPAPORT:  Yes, your Honor.

25          THE COURT:  When are you going to do that?

1        MR. RAPAPORT:  Whenever your Honor sets the

2    deadline --

3        THE COURT:  Two weeks after you get these remaining

4    documents.

5        MR. RAPAPORT:  Yes, your Honor.

6        THE COURT:  Mr. Metis, I'm sure you've had the

7    conversation with your client in which you told your client

8    that, you know, as much as you're paying me, and I'm sure it

9    hurts you to pay me, if the plaintiff prevails on this case

10   you're going to have to pay him maybe even more than you're

11   paying me, you've had that conversation, right?

12       MR. METIS:  Oh, yes, I've had that conversation.

13       THE COURT:  Okay.  So we're going to finish up the

14   remaining items that are outstanding in a week.  Two weeks

15   after that we're going to have the class cert motion.  I'll

16   look at the class cert motion and I'll decide whether I want

17   to set a trial date now or after I've determined the class

18   cert motion.  Okay.

19       MS. MILLER:  Your Honor --

20       THE COURT:  Yes.

21       MS. MILLER:  -- so does that dispense with the

22   premotion letter for that?

23       THE COURT:  Yes, it does.

24       MS. MILLER:  Okay.  Thank you.

25       THE COURT:  Okay.  Anything else we need to talk

PROCEEDINGS

1   about?

2           MR. RAPAPORT:  Not for plaintiffs, your Honor.

3           THE COURT:  Okay.  Thank you all for calling in.  We

4   are adjourned.

5           MR. METIS:  Thank you, your Honor.

6           MS. MILLER:  Thank you.

7           (Matter concluded.)

8                       *    *    *    *    *

9   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

10

11  s/ Georgette K. Betts              June 2, 2023

12  GEORGETTE K. BETTS                 DATE

13

14

15

16

17

18

19

20

21

22

23

24

25