UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X     Case No. 22-cv-05428

JUAN PINEDA, on behalf of himself and all
others similarly situated,

Plaintiff,

v.

**CLASS AND COLLECTIVE ACTION FIRST AMENDED COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

BIG CITY REALTY MANAGEMENT, LLC, BIG CITY REALTY, LLC, CFF CONSULTING INC., 3427 BROADWAY BCR, LLC, 3440 BROADWAY BCR, LLC, 3660 BROADWAY BCR, LLC, 633 WEST 152 BCR, LLC, 605 WEST 151 BCR, LLC, 545 EDGECOMBE BCR, LLC, 535-539 WEST 155 BCR, LLC, 408-412 PINEAPPLE, LLC, 106-108 CONVENT BCR, LLC, 510-512 YELLOW APPLE, LLC, 513 YELLOW APPLE, LLC, 145 PINEAPPLE LLC, 2363 ACP PINAPPLE, LLC, 580 ST. NICHOLAS BCR, LLC, 603-607 WEST 139 BCR, LLC, 559 WEST 156 BCR, LLC, 3750 BROADWAY BCR, LLC, KOBI ZAMIR, and FERNANDO ALFONSO,

Defendants.

---------------------------------------------------------------X

Plaintiff JUAN PINEDA ("Plaintiff" or "Representative Plaintiff"), by and through

his undersigned attorneys, complaining of defendants, Big City Realty Management, LLC

("Big City Realty"), Big City Realty, LLC ("BCR LLC") CFF Consulting Inc. ("CFF"), 3427

Broadway BCR, LLC ("3427 BBCR"), 3440 Broadway BCR, LLC ("3440 BBCR"), 3660

Broadway BCR, LLC ("3660 BBCR"), 633 West 152 BCR, LLC ("633 W152 BCR"), 605

West 151 BCR, LLC ("605 W151 BCR"), 545 Edgecombe BCR, LLC ("545 EBCR"), 535-

539 West 155 BCR, LLC ("535-539 W155 BCR"), 408-412 Pineapple, LLC ("408-412

PLLC"), 106-108 Convent BCR, LLC ("106-108 CBCR"), 510-512 Yellow Apple, LLC

("510-512 Yellow"), 513 Yellow Apple, LLC ("513 Yellow Apple"), 145 Pineapple LLC

("145 Pineapple"), 2363 ACP Pineapple, LLC ("2363 ACP"), 580 St. Nicholas BCR, LLC

("580 SN BCR"), 603-607 West 139 BCR, LLC ("603-607 W 139 BCR"), 559 West 156 BCR, LLC ("559 W 156 BCR"), 3750 Broadway BCR, LLC ("3750 BBCR"), Kobi Zamir ("Zamir"), and Fernando Alfonso ("Alfonso"), jointly and severally (collectively, "Defendants"), alleges:

## INTRODUCTION

**Summary of Plaintiff's Claims, the Proposed Collective, and the Proposed Class:**

1.     Defendants in this action are owners and managers of apartment buildings (the "Buildings") in low-income neighborhoods who refuse to pay premium overtime wages to their largely immigrant workforce of maintenance workers (porters, superintendents, handymen and other manual laborers), pervasively fail to pay wages in a timely manner, and require that their workers spend time performing work without any remuneration whatsoever.

2.     The majority of the manual laborers who maintain Defendants' buildings speak limited English, and they are unlikely to be familiar with the American legal system, let alone their rights under federal and state wage and hour laws.

3.     Furthermore, these low-wage workers undoubtedly grasp that they are replaceable. If they are residential superintendents, the prospect of losing their jobs virtually guarantees that they will lose the superintendent's apartments (often in basements) where they reside.

4.     Therefore, due to fear of retribution and unawareness of their rights under wage and hour law, as well as other factors, Defendants' manual labor workers are unlikely to independently take legal action to enforce their rights under wage and hour laws. Therefore, this proceeding, which is brought as a putative collective under the Fair Labor Standards Act (FLSA) and R. 23 class for New York Labor Law (NYLL) violations, is probably the only practical opportunity for Defendants' workers to obtain compensation for the unpaid wages they are owed.

2

5.      Plaintiff brings this complaint against Defendants on behalf of himself and all other persons similarly situated who are, were, or will be employed as superintendents, porters and handymen and/or in similar manual labor positions at the Buildings within the applicable statutory periods.

6.      Plaintiff brings his First Cause of Action for Defendants' failure to pay overtime wages required by the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.* (the First Cause of Action) on his own behalf and on behalf of a proposed collective of superintendents (the "Proposed FLSA Collective") who are, were or will be employed at the Buildings commencing three years prior to the commencement of this action to the date of final judgment.

7.      Plaintiff brings his Second through Fifth Causes of Action for Defendants' violations of the New York Labor Law ("NYLL") (the "NYLL Claims") on his own behalf and on behalf of a proposed Rule 23 Class (the "NYLL Class") of superintendents, porters, handymen, and other manual workers who are, were or will be employed at the Buildings commencing six years prior to the commencement of this action to the date of final judgment.

8.      Defendants violated the NYLL by, *inter alia*, failing to: (a) pay overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week; (b) pay agreed-upon wages for all hours worked; (c) properly pay wages on a timely basis as required by NYLL § 191(1)(a); (d) provide wage notices required by NYLL § 195(1); and (e) provide wage notices and wage statements required by NYLL, Article 6, §§195(1) and 195(3).

9.      Upon information and belief, defendants Zamir and Alfonso jointly manage and control at least twenty-two (22) of the Buildings, including the buildings set forth in Schedule A hereto (the "Schedule A Buildings"), and they were joint employers of the

workers at those buildings. The full extent of Zamir's and Alfonso's jointly-controlled and managed portfolio during the limitations period will be further ascertained through discovery.

10.     Upon information and belief, in addition to serving as managing agent for the Schedule A Buildings, Alfonso serves as managing agent of additional buildings (i.e., buildings that, upon information and belief, are not owned by Zamir), including the buildings set forth in Schedule B hereto (the "Schedule B Buildings").

11.     Upon information and belief, there are more than forty members of both the proposed NYLL Class and FLSA Collective.  This estimate is based on: (a) the number of Buildings; (b) the size of the Buildings, including their respective numbers of residential and commercial units; and (c) the turnover of Defendants' building maintenance personnel indicated by a review of other court cases involving defendants.

12.     The lists of the Buildings that are collectively set forth in Schedules A and B are likely incomplete, and the full extent of Defendants' real estate holdings during the applicable limitations periods is readily obtainable from Defendants, through discovery.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq*., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331), diversity jurisdiction under 28 U.S.C. §1332, and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367, because these claims are so related to the FLSA claims that they form part of the same case or controversy.

14.     Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Eastern District and are otherwise within this Court's jurisdiction for purposes of service of process.  A review of Defendants'

filings with the New York City Department of Housing Preservation and Development ("HPD") and Defendants' filings in other legal proceedings (including dozens of eviction proceedings commenced by Defendants in New York courts) shows that Defendants' principal executive offices for managing the Buildings are located in Queens and Nassau Counties.

15.     This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## THE PARTIES

**Plaintiff:**

16.     Plaintiff is an adult, natural person who resides at 3440 Broadway, New York, New York.

17.     Plaintiff was hired by Defendants in approximately November 2021, to work as a superintendent at two apartment buildings, namely 3440 Broadway and 3427 Broadway in Manhattan.

18.     Plaintiff continued working for Defendants until on or about July 29, 2022.

**Defendants:**

### Corporate Defendants:

19.     All of the corporate defendants herein either nominally hold title to the Buildings and/or were established, and are controlled by Zamir and/or Alfonso, to manage the Buildings.

20.     Defendant Big City Realty is a domestic business corporation organized and existing under the laws of the State of New York.

21.     Upon information and belief, Big City Realty serves as managing agent of multiple buildings controlled and managed by Zamir and Alfonso, including, by way of example, 555 West 151st Street in Manhattan.

22.     Defendant BCR LLC is a Maryland limited liability company that, according to its operating agreement, was formed for the purpose of acquiring, holding, managing, and investing in residential commercial real estate.

23.     Upon information and belief, BCR LLC carries out its ownership and control over the Schedule A Buildings through single purpose entities, each of which nominally holds title to one or more of the Schedule A Buildings.

24.     Defendant CFF is a domestic business corporation organized and existing under the laws of the State of New York.

25.     According to the New York Department of State Division of Corporations Entity Information database (accessed on August 26, 2022), CFF and its Chief Executive Officer, Alfonso, have a principal office address at 209-45 45th Road, Second Floor, Bayside, New York 11361.

26.     New York State court and HPD records show that CFF and its Chief Executive Officer, Alfonso, also manage the Buildings from offices at 70 East 2nd Street, Mineola, New York and 154-04 11th Avenue, Whitestone, New York.

27.     Each of the entities described in the following Paragraphs 28 through 44 nominally holds title to the Schedule A Buildings on behalf of BCR LLC.

28.     Defendant 3427 BBCR is a domestic business corporation organized and existing under the laws of the State of New York.

29.     Defendant 3440 BBCR is a domestic business corporation organized and existing under the laws of the State of New York.

30.     Defendant 3660 BBCR is a domestic business corporation organized and exiting under the laws of the State of New York.

31.     Defendant 633 W152 BCR is a domestic business corporation organized and existing under the laws of the State of New York.

32.     Defendant 605 W151 BCR is a domestic business corporation organized and existing under the laws of the State of New York.

33.     Defendant 545 EBCR is a domestic business corporation organized and existing under the laws of the State of New York.

34.     Defendant 535-539 W155 BCR is a domestic business corporation organized and existing under the laws of the State of New York.

35.     Defendant 408-412 PLLC is a domestic business corporation organized and existing under the laws of the State of New York.

36.     Defendant 106-108 CBCR is a domestic business corporation organized and existing under the laws of the State of New York.

37.     Defendant 510-512 Yellow is a domestic business corporation organized and existing under the laws of the State of New York.

38.     Defendant 513 Yellow Apple is a domestic business corporation organized and existing under the laws of the State of New York.

39.     Defendant 145 Pineapple is a domestic business corporation organized and existing under the laws of the State of New York.

40.     Defendant 2363 ACP is a domestic business corporation organized and existing under the laws of the State of New York.

41.     Defendant 580 SN BCR is a domestic business corporation organized and existing under the laws of the State of New York.

42.     Defendant 603-607 W 139 BCR is a domestic business corporation organized and existing under the laws of the State of New York.

43.     Defendant 559 W 156 BCR is a domestic business corporation organized and existing under the laws of the State of New York.

44.     Defendant 3750 BBCR is a domestic business corporation organized and existing under the laws of the State of New York.

**Individual Defendants:**

**Zamir:**

45.     Upon information and belief, Zamir is an adult natural person.

46.     Zamir is engaged in business in the City and State of New York.

47.     Based on dozens of court filings by Defendants during the past two years that have been examined by Plaintiff's counsel, Plaintiff is informed and believes that Zamir, together with Alfonso, operate and manage the Buildings from executive offices located at 209-45 45th Road, Second Floor, Bayside, New York 11361 and 70 East 2nd Street, Mineola, New York 11501

48.     Zamir is sued individually and in his capacity of owner, officer, employee and/or agent of Defendants.

49.     Upon information and belief, Zamir is the principal and/or most senior executive of the corporate defendants, including, *inter alia*, the entities that nominally hold title to the Buildings.

50.     Solely by way of example, Defendants' multiple dwelling registrations filed with HPD state that Zamir is the principal and/or most senior executive of: 408-412 PLLC, which holds title to 412 West 129th Street, New York, NY; 603-607 W 139 BCR, which

holds title to 607 West 139th Street, New York, NY; 580 St. Nicolas BCR, LLC, which holds title to 580 St. Nicholas Ave., New York, NY; 3427 BBCR, which holds title to 3427 Broadway, New York, NY ("3427 Broadway"); and 3440 BBCR, which holds title to 3440 Broadway, New York, NY ("3440 Broadway).  Copies of the HPD's rent registration summaries for 3427 and 3440 Broadway are collectively attached hereto as Exhibit A.

51.    Zamir, together with Alfonso, manages the superintendents, porters, handymen and other maintenance employees (the "Schedule A Employees") who perform work at the Schedule A Buildings.

52.    Zamir hires and fires the Schedule A Employees, sets their rate and method of pay, determines their work schedule, and, upon information and belief, maintains employment records. Until in or about 2021, BCR LLC delegated to Zamir sole management responsibility and authority to set the rates of pay and terms of employment of workers at the Schedule A Buildings.  Zamir carried out these responsibilities through Big City Realty. Beginning in 2021, and continuing to the present, Zamir delegated certain of these responsibilities to Alfonso and CFF, but Zamir still retains final decision making authority with respect to superintendents, porters and handymen, including with respect to wages.

53.    Zamir exercises sufficient operational control over Defendants' operations and decision-making authority regarding wages and other terms and conditions of employment to be considered a joint employer of Plaintiff, and similarly situated workers at the Schedule A Buildings, under the FLSA and NYLL.

**Alfonso:**

54.    Upon information and belief, Alfonso is an adult natural person.

55.    Upon information and belief, Alfonso resides in Queens County, New York.

56.    Upon information and belief, Alfonso has places of business at 154-04 11th Avenue, Whitestone, New York and/or at 212-35 42nd Ave., Apt. 420, Bayside, New York.

57.    Upon information and belief, Alfonso also holds himself out as having a management office at 70 East 2nd Street, Mineola, New York.

58.    Alfonso is an individual engaging in (or who was engaged in) business within this judicial district during the relevant time period.

59.    Upon information and belief, Alfonso is the most senior executive officer of CFF, an entity through which Alfonso managed, and continues to manage, the Schedule A and Schedule B Buildings.

60.    Upon information and belief, during the six-year period preceding the filing of this Complaint, Alfonso managed (and according to HPD records, was the registered managing agent) of, *inter alia*, the following apartment buildings in Manhattan: 3427 and 3440 Broadway, where Plaintiff was employed; 406-408 West 129th St.; 412 West 129th St.; 603 West 139th St.; 106 Convent Ave.; 2361 Adam Clayton Powell, Jr., Blvd.; 2363 Adam Clayton Powell, Jr., Blvd.; 23 Vermilyea Ave.; 3450-3456 Broadway; 3450 Broadway; 3760 Broadway a/k/a 559 West 156th St.; 2028 2nd Ave.; 3660 Broadway a/k/a 555 West 151st Street; 3820 Broadway a/k/a 575 West 159th Street; 3880 Broadway; 500 West 140th Street a/k/a 1616 Amsterdam Ave.; 298 East Third Street; 547 West 157th Street; 580 St. Nicholas Ave.; 884 Riverside Drive a/k/a 675 West 160th Street; 1835 Amsterdam Ave. a/k/a 466 West 151st St.; and 535 West 155th Street.

61.    In his professional biography, Alfonso describes himself as: "Director of operations at CFF Consulting LLC, an owner and manager of over 600 multifamily units." https://www.keterpg.com/executive-team (accessed on August 26, 2022).

62.    Alfonso's professional biography further states that he is: "Property manager with a major New York City-based property management company overseeing over 2,500 residential and commercial units." https://www.keterpg.com/executive-team (accessed on August 26, 2022).

63.    Upon information and belief, Alfonso possesses or possessed operational control over CFF.

64.    Alfonso, jointly with Zamir, determined the business, personnel and wage practices relating workers at the Schedule A Buildings, and Alfonso had the authority to hire and fire superintendents and other building workers, including Plaintiff.

65.    Upon information and belief, Alfonso also determined the personnel and wage practices relating to workers at the Schedule B Buildings, and Alfonso had the authority to hire and fire superintendents and other building workers.

66.    Alfonso exercises sufficient operational control over Defendants' operations to be considered a joint employer of Plaintiff, and similarly situated workers, under the FLSA and NYLL.  Among other personnel and wage decisions, Alfonso decided the hourly wages paid to workers at the Schedule A Buildings, including the amount of wages paid to Plaintiff.

## FACTUAL ALLEGATIONS

67.    At all times relevant to this Complaint, defendants Zamir and Alfonso jointly controlled the Schedule A Buildings.

68.    In addition to Alfonso's role as manager of the Schedule A Buildings, Alfonso served as Managing Agent of the Schedule B Buildings.

69.    Upon information and belief, Zamir and Alfonso, through various title-holding entities and management companies, were joint employers of forty or more maintenance workers, porters, superintendents and other manual laborers during the applicable FLSA and NYLL limitations periods.

70.    Title to the Schedule A Buildings is nominally vested in limited liability companies that were formed by Zamir, and are under his ultimate control.

71.    Upon information and belief, Alfonso exercises day-to-day management of the all of the Buildings, including hiring, supervising, and terminating employees.

72.    Upon information and belief, Defendants ran the Schedule A Buildings as one operation. Maintenance workers, including superintendents, were regularly assigned to simultaneously perform work at more than one building. For example, Plaintiff simultaneously served as the superintendent of two different properties controlled by Defendants, to wit: 3427 and 3440 Broadway.

73.    Similarly, superintendents and other maintenance workers were transferred among different buildings during their terms of employment with Defendants.

74.    Defendants' interchangeable use of superintendents and other maintenance workers at multiple buildings is reflected in the allegations made by the plaintiff in <u>Juan Rosario v. Big City Management, Inc., et al.</u>, SDNY Case No. 1:21-cv-04336 (the "Rosario FLSA Lawsuit"), a prior wage and hour case against Zamir, his management company, and two of Defendants' title-holding entities.

75.    At all relevant times, Defendants functioned, and continue to function, as an integrated real estate enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning, all for the purpose of operating and managing residential, mixed-use and commercial buildings.

76.    Although each of the Schedule A Buildings is nominally titled in the name of a title-holding entity, Paragraph 3.3(b) of BCR LLC's Operating Agreement states, "It is expressly understood and agreed that the manner of holding title to Company Assets (or any portion thereof) is solely for convenience of the Company."

77.    Through BCR LLC's employment agreement with Zamir, BCR LLC delegated to Zamir the responsibility to "manage and operate the properties owned by BCR and its affiliates."

78.    Defendants have applied common employment practices, policies and procedures to superintendents, porters and handymen, including, *inter alia*, their practices of:

(a) failing to pay overtime pay at 1.5 times the regular rates of pay for overtime hours (*i.e.*, hours worked above the first forty hours per week); and (b) until approximately May 2021, paying workers bi-weekly in violation of NYLL § 191(1)(a), which requires weekly payment of manual workers.

**Interstate Commerce**

79.     At all relevant times hereto, Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed Plaintiff as a superintendent. This employment position engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

80.     Among other forms of interstate activities, Defendants operate the Buildings through the extensive use and handling of goods and materials, such as cleaning supplies, paint, tools, and similar items, all of which travelled in interstate commerce, and Plaintiff personally used such materials in performing his daily job duties.

81.     At all times applicable herein and upon information and belief, Defendants' operation and control of the Buildings involved extensive business dealings with mortgage companies, banks, insurance companies, vendors, and other service providers both within and outside the State of New York.

82.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

83.     At all relevant times, Defendants employed Plaintiff within the meaning of the NYLL, §§ 2 and 651(5) and (6).

84.     Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

85.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

86.     Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions and the working conditions of similarly situated superintendents, porters and handymen.

87.     Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

88.     In the alternative, Defendants constitute a single employer of Plaintiff and similarly situated superintendents, porters and handymen.

### Collective and Class Action Allegations

### The Proposed FLSA Collective.

89.     Pursuant to  29 U.S.C. 207 & 216(b), Plaintiff brings his FLSA overtime claim, the First Cause of Action, on behalf of himself and a Proposed FLSA Collective consisting of:

> All persons who work or have worked as superintendents at buildings owned, managed and/or controlled by Defendants in New York commencing three years prior to the commencement of this action to the date of final judgment in this matter (the "Collective Action Members").

90.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were not exempt from the FLSA's overtime provisions, and they were subjected to Defendants' practice of not paying legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

91.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to similar, if not the same, payment structure.

92.     Defendants' policy and practice of not paying 1.5 times workers' regular rates of pay for overtime (i.e., hours worked in excess of forty hours per week) is reflected by prior lawsuits against Defendants brought by workers employed at the Buildings. For example, in 2021, Defendants' building maintenance employee, Juan Rosario, alleged that during his employment with Defendants at multiple buildings, he was not paid required overtime compensation. Rosario FLSA Lawsuit at Dkt. No. 1.

93.     Plaintiff's consent to sue under the FLSA is annexed hereto as Exhibit 1.

**NYLL Class Action Allegations.**

94.      Plaintiff brings the Second through Sixth Causes of Action, the NYLL Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as manual workers, including but not limited to superintendents, porters and handymen, at buildings in New York that were owned, managed and/or controlled by Defendants commencing six years prior to the commencement of this action to the date of final judgment in this matter.

95.     The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

96.     There are more than forty members of the NYLL Class.

97.     Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class.

98.     Plaintiff and the NYLL Class have been injured in that were compensated in an untimely manner due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the NYLL Class

similarly, and Defendants profited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

99.    For example, in the Rosario Lawsuit, Plaintiff alleged that he, like Pineda, was not paid weekly, but instead received his wages "every other week." *See*, Rosario Lawsuit, parties' joint request for approval of settlement, dated May 2, 2022, Doc. No. 37.

100.    Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class.

101.    Plaintiff is represented by attorneys who are experienced and competent in both class and collective action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases, particularly in cases that, as here, involve claims of superintendents and building maintenance workers.

102.    A class action is superior to other available methods of fair and adjudication of NYLL Claims, particularly because many of the putative members of the NYLL Class do not speak English, are unlikely to be familiar with their rights under the NYLL, may be fearful of suffering retaliation if they commence a lawsuit, and may not have the financial resources to vigorously pursue a lawsuit.

103.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a) whether Defendants compensated Plaintiff and the NYLL Class on a timely basis;

(b) whether Defendants paid the NYLL Class premium overtime compensation for all hours worked above forty in a workweek;

(c) whether Defendants compensated Plaintiff and the NYLL for accrued wages at agreed-upon wage rates (gap-time);

(d) whether Defendants furnished Plaintiff and the NYLL Class with accurate wage notices and wage statements as required by the NYLL;

**Factual Allegations Relating to Plaintiff's Wage Claims:**

104.    Plaintiff first began working for Defendants on or about November 1, 2021, when he was hired to work as the superintendent of Defendants' buildings located at 3440 and 3427 Broadway, New York, NY.

105.    Plaintiff's employment with Defendants continued until on or about July 29, 2022.

106.    Plaintiff interviewed with, and was hired by, defendant Alfonso.

107.    During the first month of Plaintiff's employment with Defendants, Plaintiff did not reside at the buildings he was responsible for maintaining. Plaintiff would travel to the buildings from his apartment.

108.    Alfonso represented to Plaintiff that Plaintiff would be paid $20.00 per hour, which was reflected in Defendants' offer letters to Plaintiff, dated November 1, 2022.

109.    The foregoing offer letters also stated that Plaintiff would be paid bi-weekly.

110.    Defendants' practice of delaying their wage payments to Plaintiff, and not paying Plaintiff on a weekly basis, caused Plaintiff to suffer actual harm.

111.    In or about March 2022, without providing any advance notice to Plaintiff, Defendants lowered Plaintiff's hourly rate of pay by $3.75, to $16.25 per hour.

112.    Plaintiff only learned of the foregoing pay cut when he observed that his paycheck was lower than before.

113.    Defendants continued to pay Plaintiff at the reduced rate of $16.25 per hour until shortly before Alfonso terminated Plaintiff from his job in July 2022.

114.    During the entire period of Plaintiff's employment, Defendants did not pay premium overtime pay to Plaintiff at 1.5 times his regular rate of pay for hours Plaintiff worked above the first forty hours per work week.

115.    Plaintiff regularly worked 48 or more hours per week, typically as follows: weekdays: 8:00 a.m. to 4:00 p.m.; Saturdays:  8:00 a.m. to 12:00 p.m.; and Sundays: 8:00 a.m. to 12:00 p.m.

116.    In or about December 2021, defendant Alfonso stated to Plaintiff that Plaintiff was required to reside at one of the buildings where he worked (3440 Broadway) for the purpose of being readily available, on-call, to handle requests and emergent issues.

117.    Due to the deteriorated condition of the buildings, including their boilers, Plaintiff was regularly called to address issues on weekends, above and beyond the regular work he would perform each Saturday and Sunday.

118.    Tenants were provided with Plaintiff's cellular telephone number to reach Plaintiff at all hours.

119.    Alfonso would also call Plaintiff at night for emergent issues.  For example, in approximately November 2021, before Plaintiff began residing at the Building, Alfonso contacted Plaintiff late at night regarding an emergent issue relating to the boiler at 3427 Broadway.  Plaintiff arrived at the scene after Midnight, and spent the entire night addressing the issue.  As a consequence, during that work week, Plaintiff's worked at least fifty-three (53) hours.  Plaintiff was not compensated for the additional overnight hours he worked.

120.    Initially, Defendants paid Plaintiff for work that he performed on Saturdays and Sundays, albeit at the regular hourly rate of pay, without premium overtime compensation.

121.    In March 2022, when Defendants lowered Plaintiff's hourly wage rate to $16.25, Defendants instructed Plaintiff to exclude his Saturday and Sunday work hours from his time sheets.

122.    As a result, Plaintiff was required to work on Saturdays and Sundays without any compensation.

123.    Plaintiff's duties involved manual labor, including removal of trash and recyclables, painting, plastering, light electrical work, communicating with tenants, addressing leaks, shoveling snow, and cleaning.

124.    Tenants communicated with Plaintiff at all hours of the day and night.

125.    Plaintiff was required to be on-call and handle tenant requests at all hours, which entailed work hours that were far in excess of his foregoing regular schedule.

126.    At all relevant times, Defendants were aware that Plaintiff's job responsibilities involved working extensive hours on weekends.

127.    Defendants willfully failed and refused to generate and keep accurate records of the days and times that Plaintiff and other residential superintendents worked, and disallowed Plaintiff from reporting all of his hours, in violation of 29 U.S.C. § 211(c), 29 CFR § 516.2, and NYLL § 195.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(On Behalf of Plaintiff and the FLSA Collective)**

128.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

129.    As described above, Plaintiff worked in excess of forty hours in a workweek.

130.    As described above, Defendants did not properly compensate Plaintiff for all hours he worked in excess of forty in a workweek, as required by the FLSA.

131.    Plaintiff is informed and believes, and thereon alleges, that Defendants have required, or require, the FLSA Collective Members, as part of their employment at the Buildings, to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate

which is not less than one and one-half times the regular rate at
which he is employed.

132.    In the performance of their duties for Defendants, members of the FLSA Class
routinely worked more than forty (40) hours per week, yet did not receive premium overtime
compensation for the work.  The precise number of unpaid overtime compensation will be
proven at trial.

133.    Plaintiff proposes to undertake appropriate proceedings to have such FLSA
Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this
action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written
consents to joinder with the Court.

134.    Defendants' overtime violations of the FLSA were willful violations of the
FLSA, within the meaning of 29 U.S.C. § 255(a).

135.    Defendants have a policy and practice of refusing to pay overtime
compensation to Plaintiff and other superintendents

136.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on
his own behalf, and on behalf of those FLSA Collective Members similarly situated who file
written consents to joinder in this action, for all unpaid overtime wages owed by Defendants
to Plaintiff and the FLSA Collective, pursuant to 29 U.S.C. §§ 206 and 207, together with an
award of an additional equal amount as liquidated damages, and costs, interest, and
reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(On Behalf of Plaintiff and the New York Class – FRCP Rule 23)**

137.    Plaintiff realleges and incorporates by reference all allegations in all preceding
paragraphs.

138.    Plaintiff repeats and realleges each and every allegation contained in the
foregoing paragraphs, with the same force and effect, as if fully alleged herein.

139.    Defendants employed Plaintiff and other superintendents for workweeks longer than forty (40) hours and willfully failed to compensate them for the time worked in excess of forty (40) hours per week, at a rate of less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

140.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2.

141.    Defendants have a policy and practice of refusing to pay overtime compensation at 1.5 employees' regular rates of pay to Superintendents and other building maintenance personnel.

142.    As a consequence, Plaintiff and members of the New York Class have incurred damages thereby and the Defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
**NYLL § 191(1)(a) – Late Payment of Wages**
**(On Behalf of Plaintiff and the New York Class – FRCP Rule 23)**

143.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

144.    The majority of Plaintiff's duties, and the duties of other superintendents, porters and maintenance workers at the Buildings, involved physical labor.

145.    Defendants failed to pay Plaintiff, and similarly situated superintendents, porters and maintenance workers at the Buildings, within the time period and intervals required by NYLL § 191(1)(a), and instead paid Plaintiff and members of the NYLL Class on a bi-weekly basis. Defendants did not cease this unlawful practice until approximately late May, 2020.

146.    In addition, payment of certain wages that Plaintiff earned, particularly for apartment renovations, was long delayed, and Plaintiff was belatedly compensated after he was terminated.

147.    NYLL § 191 allows a manual worker to bring a civil action for delayed payment of wages, even if the wages have been subsequently paid.

148.    NYLL § 198(1-a) expressly provides a private right of action, including a claim for liquidated damages, for a violation of NYLL § 191.f

149.    Untimely payment of wages causes actual harm to manual workers, who like Plaintiff, rely on their wages for sustenance, and suffer deprivation when they are not paid each week.

150.    Untimely payment of wages is a practice by which employers usurp the funds of low-wage workers, which has the effect of enabling employers to control, at any given time, the equivalent of entire week's payroll of all their impacted workers.  At any given time, liquid funds – cash flow – were corruptly available to employers, at the expense of workers who needed the funds to pay for basic necessities.  On a class-wide basis, the effect was substantial – and unfairly gave Defendants all the advantages (and deprived workers of these advantages) that come with having immediately-available funds.

151.    Because Plaintiff's wages were low, Defendants' unlawful delay in paying his wages caused Plaintiff to experience financial difficulties during the second week of each pay period.

152.    The provisions of NYLL § 191 requiring the timely payment of wages, and the applicable supporting regulations, applied to Defendants and protect Plaintiff and members of the NYLL Class. Consequently, Defendants were required to pay Plaintiff and members of the NYLL Class weekly and not later than seven calendar days after the end of the week in which wages were earned.

153.    Instead of paying Plaintiff and members of the NYLL Class on a weekly basis for work, Defendants unlawfully required Plaintiff and members of the NYLL Class to wait, and, instead, remitted paychecks every two weeks.

154.    Due to Defendants' violations of NYLL § 191(1)(a), Plaintiff and members of the NYLL Class are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**Violation of NYLL § 195(3)**
**(On behalf of Plaintiff and the NYLL Class)**

155.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

156.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

157.    Defendants willfully failed to provide Plaintiff and NYLL Class Members with wage statements at the end of every pay period that correctly identified the number of overtime hours worked and other information as required by NYLL § 195(3).

158.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR A FIFTH CAUSE OF ACTION
### FNYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices
### Violation of NYLL § 195(1); Statutory Damages NYLL § 198
### (On behalf of Plaintiff and the NYLL Class)

159.    Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

160.    The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

161.    Defendants willfully failed to furnish Plaintiff, at the time of hiring or when there was a change to his rate of pay, with wage notices required by NYLL § 195(1).

162.    Among other omissions, Defendants' wage notices at the time of hire failed to set forth the physical address of the employer(s) and/or the overtime rate of pay.

163.    Because the WTPA was in effect when Plaintiff commenced his employment with Defendants, Plaintiff is entitled to bring this private cause of action for statutory damages for Defendants' failure to provide Plaintiff with a legally valid wage notice when Defendants first became Plaintiff's employer.

164.    Due to Defendants' violation of NYLL § 195(1), Plaintiff and the NYLL Class are entitled to recover from Defendants $50.00 per work day that the violations occurred or continue to occur, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

165.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of the NYLL Class, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper

**RELIEF SOUGHT**

**WHEREFORE,** Plaintiff, Juan Pineda, on behalf of himself and members of the FLSA Collective and NYLL Class, respectfully requests that this Honorable Court:

1.    Designate this action as a collective action on behalf of the FLSA Class members and order the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the FLSA Collective Members.

2.    Designate Plaintiff as representative of the FLSA Collective.

3.    Designate Plaintiff's counsel as counsel for the FLSA Collective.

4.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the NYLL Class members.

5.    Appoint Plaintiff as representative of the NYLL Class.

6.    Appoint Plaintiff's counsel as Class Counsel for the NYLL Class.

7.    Toll the statutes of limitations.

8.    Declare, adjudge and decree that Defendants willfully violated the overtime wage provisions of the FLSA as to the Plaintiff and the FLSA Collective.

9.    Declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to Plaintiff and the New York Class.

10.    Declare, adjudge and decree that Defendants willfully violated their legal duties to pay accrued wages to Plaintiff and the New York Class.

11.     Award Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiff and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b);

12.     Award Plaintiff and all those similarly situated attorneys' fees, costs and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

13.     Award Plaintiff and the NYLL Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under New York law.

14.     Award Plaintiff and the NYLL Class liquidated damages pursuant to the NYLL for all wages not paid on a timely basis.

15.     Award Plaintiff and the NYLL Class of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d).

16.     Award Plaintiff and the NYLL Class statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b).

17.     Award reasonable attorneys' fees and costs of the action.

18.     Such other relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all issues so triable.

Dated:  New York, New York
              November 11, 2024

Respectfully submitted,

RAPAPORT LAW FIRM, PLLC


                                        */s/ Marc Rapaport*
By:     _____
              Marc A. Rapaport

80 Eighth Avenue, Suite 206
New York, New York 10011
Ph: (212) 382-1600
mrapaport@rapaportlaw.com

and

MILLER LAW, PLLC

/s/ *Meredith Miller*

By: _____
Meredith Miller
167 Madison Avenue, Suite 503
New York, New York 10016
Ph: (347) 878-2587
meredith@millerlaw.nyc

*Attorneys for Plaintiff, the Putative Collective,
and Putative Class*

27

**SCHEDULE A**
**THE SCHEDULE A BUILDINGS**

| Building Addresses |
| --- |
| 607 West 139th Street, NY, NY 10031 |
| 603 West 139th Street, NY, NY 10031 |
| 3427 Broadway, NY, NY 10031 |
| 605 West 141st Street, NY, NY 10031 |
| 605 West 151st Street, NY, NY 10031 |
| 633 West 152nd Street, NY, NY 10031 |
| 461 West 159th Street, NY, NY 10032 |
| 3750 Broadway, NY, NY 10032 |
| 535 West 155th Street, NY, NY 10032 |
| 539 West 155th Street, NY, NY 10032 |
| 3760 Broadway, NY, NY 10032 |
| 406 West 129th Street, NY, NY 10027 |
| 412 West 129th Street, NY, NY 10027 |
| 106 Convent Avenue, NY, NY 10027 |
| 110 Convent Avenue, NY, NY 10027 |
| 510 West 134th Street, NY, NY 10031 |
| 513 West 134th Street, NY, NY 10031 |
| 2361 Adam C. Powell Boulevard, NY, NY 10030 |
| 2363 Adam C. Powell Boulevard, NY, NY 10030 |
| 580 Saint Nicholas Avenue, NY, NY 10030 |
| 3440 Broadway, NY, NY 10031 |
| 3660 Broadway, NY, NY 10031 |

**SCHEDULE B**
**THE SCHEDULE B BUILDINGS**

| Building Addresses |
| --- |
| 298 East Third Street, NY, NY 10009 |
| 214 East 111th Street, NY, NY 10029 |
| 2081 Fifth Avenue, NY, NY 10035 |
| 1616 Amsterdam Avenue, NY, NY 10031 |
| 602 West 139th Street, NY, NY 10031 |
| 3924 Broadway, NY, NY 10032 |
| 23 Vermilyea Avenue, NY, NY 10034 |
| 299 Troutman Street, Brooklyn, NY 11237 |
| 1436 Myrtle Avenue, Brooklyn, NY 11237 |
| 1454 Myrtle Avenue, Brooklyn, NY 11237 |
| 1456 Myrtle Avenue, Brooklyn, NY 11237 |