UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
JUAN PINEDA, on behalf of himself and all   :
others similarly situated,   :
  :   **MEMORANDUM DECISION AND**
                Plaintiff,   :   **ORDER**
  :
      - against -   :   22-cv-5428 (BMC)
  :
BIG CITY REALTY MANAGEMENT,   :
LLC, BIG CITY REALTY, LLC, CFF   :
CONSULTING INC., 3427 BROADWAY   :
BCR, LLC, 3440 BROADWAY BCR, LLC,   :
3660 BROADWAY BCR, LLC, 633 WEST   :
152 BCR, LLC, 605 WEST 151 BCR, LLC,   :
545 EDGECOMBE BCR, LLC, 535-539   :
WEST 155 BCR, LLC, 408-412   :
PINEAPPLE, LLC, 106-108 CONVENT   :
BCR, LLC, 510-512 YELLOW APPLE,   :
LLC, 513 YELLOW APPLE, LLC, 145   :
PINEAPPLE LLC, 2363 ACP PINEAPPLE,   :
LLC, 580 ST. NICHOLAS BCR, LLC, 603-   :
607 WEST 139 BCR, LLC, 559 WEST 156   :
BCR, LLC, 3750 BROADWAY BCR, LLC,   :
KOBI ZAMIR, and FERNANDO   :
ALFONSO,   :
  :
              Defendants.   :
--------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Juan Pineda has sued several corporate entities and two of their alleged

controllers and managers, Kobi Zamir and Fernando Alfonso, that he claims operated together as

his former employer. He contends that his employers failed to pay him and other

superintendents, porters, and handymen overtime wages in violation of the Fair Labor Standards

Act (the "FLSA") and New York Labor Law (the "NYLL"); failed to pay them weekly, as

required by the NYLL; and failed to provide accurate wage statements and wage notices. Before

me is plaintiff's motion for approval to proceed with a collective action and for court-facilitated

notice under the FLSA, see 29 U.S.C. § 216(b), as well as plaintiff's motion for class

certification of plaintiff's NYLL claims pursuant to Federal Rule of Civil Procedure 23. Because

plaintiff has shown that he is similarly situated to the other superintendents and porters in his

proposed collective under the FLSA, his motion for court-facilitated notice is granted to the

extent set forth below. However, the state law janitorial exemption requires denial of plaintiff's

motion for class certification of his overtime, wage statement, and wage notice claims.

Proceedings as to plaintiff's weekly wage claim are stayed.

## BACKGROUND

Plaintiff worked as a superintendent for defendants at their 3440 Broadway and 3427

Broadway buildings in Manhattan from November 2021 through July 2022. These buildings, as

well as the other buildings listed in Schedule A of plaintiff's amended complaint (the "Big City

Buildings") are owned by title-holding entities that are, in turn, owned by Big City Realty, LLC

("BCR LLC"). Kobi Zamir is one of four investors in BCR LLC, and the only one residing

locally in New York City. Zamir managed the Big City Buildings, including by hiring workers,

determining hourly wages, and assigning workers to work at particular buildings, until May

2021. At that point, BCR LLC hired CFF Consulting Inc., which now manages all Big City

Buildings. Fernando Alfonso owns and controls CFF, through which he acts as a property

manager for the Big City Buildings, determining the hourly wages of workers. Zamir and BCR

LLC retain final decision-making authority over wages.

Plaintiff began to reside at one of the buildings for which he was a superintendent, 3440

Broadway, in December 2021. The amended complaint still lists 3440 Broadway as plaintiff's

address.

Plaintiff alleges that during the first six months of his employment, he worked forty-eight or more hours per week and received twenty dollars per hour, including overtime hours. Plaintiff entered his time separately for the two buildings for which he was a superintendent, and received separate wage statements and paychecks from the respective title-holding companies of those buildings. Even though plaintiff worked "interchangeably at both buildings, as though they were a 'single enterprise,'" by reporting his time separately and receiving payment from two different title-holding companies, defendants were able to disguise plaintiff's overtime hours. Around March 2022, plaintiff states, defendants instructed plaintiff to stop reporting any of the hours he worked on weekends, resulting in plaintiff receiving no pay for approximately eight hours of work per week.

Until March 2022, defendants paid plaintiff once every two weeks. Defendants eventually started paying plaintiff weekly but lowered his hourly rate of pay to sixteen dollars and twenty-five cents per hour. Furthermore, defendants never provided plaintiff with wage statements that correctly identified the number of overtime hours worked, nor did they provide a wage notice with defendants' physical address or the overtime rate of pay.

Plaintiff contends that he was not alone in being denied overtime compensation, weekly pay, and accurate wage notices and statements. He avers that "current or former superintendents, porters and handymen who worked at 23 buildings (the 'Big City Buildings') owned and operated by defendants were subject to the same illegal wage and hour practices and policies, including defendants' failure to pay wages for overtime work." He points to Alfonso's deposition testimony that the superintendents and porters had basically the same terms of employment and that defendants handled payroll, wages, and pay notices the same way for workers at all of the Big City Buildings; bi-weekly paystubs and timesheets of a porter and

3

plaintiff that masked overtime hours in the same way; wage notices produced by defendants that inform workers that their regular and overtime hourly rates of pay would be the same and that they would be paid bi-weekly; and defendants' admissions that they paid all superintendents on a bi-weekly basis.  Plaintiff thus moves for approval of a collective action for his FLSA overtime wage violation claim and for class certification of his NYLL claims.

Originally, plaintiff only moved for class certification of his NYLL claims, declining to move for approval of an FLSA collective action when the Court set a deadline for such a motion before any discovery between the parties.  In light of the Sixth Circuit's decision in Clark v. A&L Homecare and Training Center, LLC, 68 F.4th 1003 (6th Cir. 2023), the Court reconsidered its order requiring plaintiff to move for approval of a collective action prior to discovery.  Instead, the Court permitted plaintiff to move for approval of a collective action after the parties conducted discovery, which plaintiff timely filed.

In addition to the FLSA collective action and class certification motions pending before the Court, plaintiff submitted a letter requesting that his claim for failure to pay weekly wages also receive collective action treatment based on developments in this Circuit's caselaw. Plaintiff had previously included this claim in his motion for class certification, but not for collective action treatment.

## DISCUSSION

### I.    FLSA Collective Action

#### A.  Legal Standard

The FLSA authorizes employees to bring collective actions to recover unpaid overtime compensation that other, similarly situated employees may file their consent to join.  See 29 U.S.C. § 216(b).  Because similarly situated employees can become plaintiffs only by filing

written consent with the court, see id., courts may employ their discretionary authority to facilitate notice to those employees, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).

District courts in the Second Circuit commonly use a two-step approach to approving collective actions, involving a "modest factual showing" at the first step that the potential opt-in plaintiffs are similarly situated to the plaintiff regarding the employer's common policy or plan that allegedly violated the FLSA. Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). Although the Second Circuit has reviewed district courts' application of this two-step process for abuse of discretion, see Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 539 (2d Cir. 2016), and has found the approach "sensible," Myers, 624 F.3d at 552, "it has not formally adopted a specific test" for conditional approval of an FLSA collective action. Davella v. Ellis Hosp., Inc., No. 12-cv-726, 2024 WL 98352, at *5 (N.D.N.Y. Jan. 9, 2024) (citations omitted).

The Sixth Circuit, in contrast, has rejected the two-step test. See Clark, 68 F.4th 1003. It has traced the history of that approach, finding that it was first described in a New Jersey District Court decision, Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), and then adopted by other district courts without independent analysis. In the Sixth Circuit, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." Clark, 68 F.4th at 1011 (citation omitted). This standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." Id. Given this higher standard, motions for court-facilitated notice based on a "strong likelihood" that employees are similarly situated are more likely to require "discovery relevant to the motion" before they can be decided. Id.

Although this Court had originally envisioned using the two-step test traditionally used in the Second Circuit, and therefore required plaintiff to move for approval of a collective action before the parties had engaged in discovery, it has reconsidered that approach in light of Clark. Just because the two-step approach is "well-tread," Tay v. New York & Presbyterian Hosp., No. 22-cv-8379, 2024 WL 4286226, at *5 (S.D.N.Y. Sept. 24, 2024), does not make it well-suited to the goals of court-facilitated notice of an FLSA collective action: to enforce the "broad remedial goal of the statute . . . to the full extent of its terms" while also maintaining "scrupulous . . . respect [of] judicial neutrality" by ensuring that such notice "is distinguishable in form and function from the solicitation of claims." Hoffmann-La Roche, 493 U.S. at 173-74.

The lower "modest factual showing" standard, especially when applied before any discovery has been conducted, may not be sufficiently targeted to provide notice to employees who are actually similarly situated to plaintiffs in a given case. And notice provided to employees who are not similarly situated "amounts to solicitation of those employees to bring suits of their own." Clark, 68 F.4th at 1010. Applying a strong likelihood standard, after limited discovery as deemed necessary by the Court, will better effectuate the remedial purpose of the FLSA by providing plaintiffs the opportunity to access defendant-held information that can show the similarity of workers' situations, while also ensuring that courts do not overstep their role by soliciting claims outside the scope of the litigation before them.

In Tay v. New York and Presbyterian Hospital, 2024 WL 4286226, at *4 (citation omitted), a district court applied the two-step approach over the strong likelihood requirement adopted in Clark, identifying a list of functions that "are well served by a lenient step-one standard, which allows courts to act quickly while still weeding out implausible cases." However, the "modest showing" of the first step has become so minimal, allowing evidence

based not only on hearsay, but double hearsay, and, indeed, lack of specific identification of co-employees, see, e.g., Rotari v. Mitoushi Sushi, Inc., 448 F. Supp. 3d 246 (E.D.N.Y. 2020), that as a practical matter, there is very little "weeding out" that happens.

Moreover, each function identified in Tay is similarly well-served by the strong likelihood standard: there will still be "efficient resolution in one proceeding of common issues of law and fact," the avoidance of "duplicative suits," and the ability of the "district court to 'set deadlines for opt-in consents and other decisions to expedite disposition of the action.'" Id. (quoting Hoffmann-La Roche, 493 U.S. at 170, 172; Clark, 68 F.4th at 1017 (White, J., concurring)). Furthermore, courts will be able to weed out implausible cases with much more precision than under the "modest factual showing" requirement, by actually considering evidence of plaintiffs' and potential plaintiffs' similar situations through court-ordered limited discovery. Given the lack of a binding Second Circuit test to apply for approval of an FLSA collective action, and the wisdom of the Sixth Circuit's approach, this Court permitted plaintiff to bring its motion for approval of a collective action after the completion of discovery, and now applies the strong likelihood standard to determine whether it will grant court-facilitated notice of the putative collective.

Defendants argue that this Court improperly exercised its discretion in permitting plaintiff to bring this motion. But defendants point to no "error of law[,] clearly erroneous factual finding, or [a] decision [that] cannot be located within the range of permissible decisions." Myers, 624 F.3d at 547. The Sixth Circuit's decision in Clark clarified the standard district courts should apply in facilitating notice of collective actions as well as the timing of such determinations. Accordingly, this Court reconsidered its order requiring plaintiff to move

for approval of a collective action before discovery began.  Such reconsideration was well within the Court's discretion to manage its docket.

Nor do defendants point to any prejudice they will experience from the Court considering plaintiff's motion to approve an FLSA collective action.  The Court will only permit those potential opt-in plaintiffs to join who are similarly situated to plaintiff and subject to the same alleged FLSA violations.  If such plaintiffs did not join this case, they could bring their own case, subjecting defendants to the same, if not more, exposure and litigation expense.  In fact, plaintiff in this case did just that: he brought this suit after another superintendent brought an overtime lawsuit against defendants.

**B. Analysis**

*i. Superintendents and Porters*

Plaintiff has sufficiently established a strong likelihood that he and other superintendents and porters employed by defendants at the Big City Buildings were subject to a common policy or plan that resulted in their failure to receive overtime wages while working for defendants.

Alfonso, the manager of the Big City Buildings, testified that the superintendents and porters were employed under basically the same terms of employment: they received the same notices, were paid on the same schedule, and the same people and corporations were responsible for processing their payrolls following the same method.  Alfonso further testified that defendants handled payroll and pay notices the same way for superintendents at all Big City Buildings.  Zamir testified similarly, that under his management all superintendents, and more broadly all workers at Big City Buildings, received payment in the same manner, processed by the same individuals and entities.  Plaintiff provided paystubs and timesheets of a porter and plaintiff that masked overtime hours in the same way: the workers both entered separate

timesheets for the different buildings they worked at so that the number of hours they worked at each building remained under forty per week; that way, defendants could pay them from different entities under the illusion that their work, amounting to over forty hours per week, was not done for the same employer.  Moreover, plaintiff points to both his wage notice and a porter's wage notice, both of which list the overtime rate as the same as the standard rate of pay.

This information is sufficient to establish a strong likelihood that plaintiff and the other Big City Buildings superintendents and porters are similarly situated to plaintiff and were victims of a common policy or plan that allegedly violated the FLSA.  Similar issues of law include whether defendants' policy of having superintendents and porters submit separate timesheets for work performed at separate buildings violates the FLSA and whether they are entitled to overtime pay as a result.  Similar issues of fact include the mechanisms by which defendants paid their superintendents and porters at the Big City Buildings.  Plaintiff has shown by a standard much "greater than the one necessary to create a genuine issue of fact" that these similar issues exist across superintendents and porters, including through defendants' own testimony and paystubs, wage notices, and timesheets that show identical treatment of superintendents and porters.  Clark, 64 F.4th at 1011.

It is therefore not surprising that the modest factual showing analysis required at the first step of the two-step approach would result in the same outcome.  Plaintiff has far surpassed this standard, presenting evidence that superintendents and porters receive the same treatment from defendants that allegedly ensures they do not receive overtime pay for their overtime work. Under either standard, plaintiff has made an adequate showing that defendants' other superintendents and porters are similarly situated to him, and thus the Court will authorize court-

facilitated notice to the superintendents and porters employed by defendants in the Big City Buildings as identified by plaintiff in Schedule A to plaintiff's amended complaint.

Defendants argue that plaintiff's support for court-facilitated notice of a collective action is insufficient. But defendants try to liken this case to those in which the plaintiff presents insufficient "bottom-up" support, that is, plaintiff's own knowledge of potential opt-in plaintiffs' wages. See, e.g., Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 15-cv-3642, 2013 WL 5132023 at *5-7 (E.D.N.Y 2013). Here, plaintiff does not rely on such "bottom-up" support. Instead, plaintiff presents more than sufficient "top-down" information, "showing that the employer had a policy or practice of treating all employees in the class similarly with respect to the allegedly illegal labor law practice." Contrera v. Langer, 278 F. Supp. 3d 702, 716 (S.D.N.Y. 2017).

"Top-down" information is a perfectly acceptable, and perhaps even preferable, method "by which a plaintiff may show he or she is 'similarly situated' to the group of employees to whom he or she seeks to send notice of a lawsuit." Id. Defendants' testimony about common wage practices that extended to all employees, wage notices documenting the same illegal conduct, and timesheets presenting the same pattern of masking overtime pay across employees all point to defendants' "policy or practice of treating all employees [the same] with respect to the allegedly illegal labor law practice." Id. Plaintiff's lack of "bottom-up" support does not defeat court-facilitated notice where plaintiff has presented more than sufficient "top-down" support.

Defendants also take issue with the fact that superintendents may, and plaintiff did, receive lodging from defendants, providing a state defense to superintendents' claims that would not apply to porters. But such a defense would have no bearing on overtime claims under the

FLSA.  And even if defendants have a defense unique to plaintiff, "if named plaintiffs and party

plaintiffs share legal or factual similarities material to the disposition of their claims" – as

plaintiff has shown – "dissimilarities in other respects should not defeat collective treatment."

Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020).[1]

Because defendants' arguments do not undermine the clear support plaintiff has

presented to show that defendants' other superintendents and porters are similarly situated and

likely subject to the same alleged FLSA violation, this Court will authorize notice of an FLSA

collective action to superintendents and porters employed at the Big City Buildings listed in

Schedule A to plaintiff's amended complaint.

     *ii.    Handymen and Other Manual Workers*

Plaintiff makes passing references to handymen and "other manual workers" at the Big

City Buildings, and includes handymen and other manual workers in his proposed collective

action notice.  But plaintiff provides no substantive information that such handymen or "other"

manual workers are similarly situated or subject to the same alleged FLSA violation.  Even under

the lower modest factual showing standard, "[t]o justify including different categories of workers

in an FLSA collective, a 'modest but *job-specific* factual showing' is required."  Liping Dai v.

Lychee House, Inc., No. 17-cv-6197, 2018 WL 4360772, at *10 (S.D.N.Y. Aug. 29, 2018)

(emphasis in original) (quoting Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 563

(S.D.N.Y. 2015)).

Plaintiff's references to handymen are conclusory and unsupported by any factual

assertions (e.g., "similarly situated current or former superintendents, porters and handymen who

---

[1] Defendants' objection to court-facilitate notice based on plaintiff's allegation that superintendents were "on call" in a way porters may not have been is also of little concern.  To the extent overtime payment for "on call" time becomes an issue, it will be an issue of damages that does not create a separate legal issue particular to superintendents.

worked at . . . the 'Big City Buildings' . . . owned and operated by Defendants were subject to the same illegal wage and hour practices and policies, including Defendants' failure to pay wages for overtime work").  Plaintiff does not provide any affidavits, paystubs, timesheets, wage notices, or any other support for the assertion that plaintiff is similarly situated to handymen employed by defendants.  All plaintiff can point to is the fact that defendants processed payroll for all employees using the same system.  This fact, without more, does not provide any indication that defendants treated handymen similarly to plaintiff in requiring them to fill out their timesheets in a certain way such that they would not receive overtime payment.  In fact, Alfonso testified that defendants do not currently employ any handymen, and plaintiff has not presented any evidence to the contrary.  Even under the more lenient "modest factual showing" requirement, "there is no basis for concluding that these two groups were subject to the same policy or that they share any sort of factual nexus."  Colon v. Major Perry St. Corp., No. 12-cv-3788, 2013 WL 3328223, at *7 (S.D.N.Y. July 2, 2013).

Plaintiff's references to "other manual workers" at the Big City Buildings are even more scarce, and equally conclusory.  Plaintiff does not identify what positions exist in this category, let alone make any job-specific factual showings as to other manual workers.  Therefore, this Court will not include in its provision of court-facilitated notice any workers other than superintendents and porters.  See Liping Dai, 2018 WL 4360772, at *10-11.

      *iii.    Failure to Pay Weekly Wages Claim*

Plaintiff requests that the Court include an untimely wages claim in the FLSA collective action based on a recently decided case including a NYLL § 191 claim for failure to pay weekly wages in an FLSA collective.  See Cooke v. Frank Brunckhorst Co., LLC, 722 F. Supp. 3d 127 (E.D.N.Y. 2024), aff'd on reconsideration in part, No. 23-cv-6333, 2024 WL 2263087 (E.D.N.Y.

May 18, 2024).  However, the FLSA itself does not have a weekly payment requirement for manual laborers.  "The Act does not specify *when*" employees must be paid, just that they must be paid promptly.  Rogers v. City of Troy, N.Y., 148 F.3d 52, 55 (2d Cir. 1998) (emphasis in original).  Thus, failure to pay employees on a weekly basis cannot form the basis of a claim under the FLSA.  This is especially true where, as here, plaintiff asserts that defendants did pay his wages promptly, just on a biweekly instead of weekly schedule.

Plaintiff cannot replace the FLSA's prompt payment requirement with the NYLL's weekly payment for manual workers requirement.  The FLSA is not a mechanism to enforce a solely state-law requirement.  This Court will not impute a state law requirement into a federal scheme intended "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act."  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 741 (1981) (quotation omitted).

## II.    Notice

In determining the scope and content of notice, courts are "guided by the goals of the notice to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants."  Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012).  The Court holds that the notice materials provided by plaintiff should be sent to all superintendents and porters employed by defendants at the Big City Buildings as modified below.

### A.  Length of Notice Period

The FLSA has a three-year statute of limitations for willful violations and a two-year statute of limitations for non-willful violations.  See 29 U.S.C. § 255(a).  Plaintiff has alleged willfulness, and the Court is not going to resolve that issue at this stage.  See Velasquez v.

13

Digital Page, Inc., No. 11-cv-3892, 2014 WL 2048425, at *10 (E.D.N.Y. May 19, 2014) (rejecting a two-year period).  Therefore, the Court will allow a three-year look-back period for notice and requests for information.

## B.  Start of Notice Period

The notice period under the FLSA "generally should be measured from the date of the court's order granting the motion for conditional [approval], not from the date that the complaint was filed."  Ritz v. Mike Rory Corp., No. 12-cv-367, 2013 WL 1799974, at *3 (E.D.N.Y. April 30, 2013).  This is because the statute of limitations runs for opt-in plaintiffs until the "date on which [their] written consent is filed in the court in which the action was commenced."  29 U.S.C. § 256(b).  Therefore, a look-back period beginning on the date of the court's order authorizing notice is usually sufficient to sweep in all possible putative plaintiffs who may later opt-in.

Nonetheless, "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine."  Yahraes v. Restaurant Assocs. Events Corp., No. 10-cv-935, 2011 WL 844963, at *1 (E.D.N.Y. March 8, 2011) (internal quotation marks omitted).  And "[w]hile plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."  McGlone v. Cont. Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling statute of limitations in FLSA collection action).

Because this Court previously ordered plaintiff not to file a motion for approval of an FLSA collective action, and instructed plaintiff to instead move for class certification under

Federal Rule of Civil Procedure 23, the Court tolls the statute of limitations for opt-in plaintiffs from August 15, 2023, which is sixty days after the date that plaintiff's motion for class certification became fully briefed,[2] until the date of this Order.  Therefore, any disclosed information shall cover only those putative collective members employed within three years of August 15, 2023, and notice may only be distributed to those persons.

Defendants' argument that plaintiff is not entitled to equitable tolling because he did not originally seek approval of a collective action is based on an incomplete retelling of the history of this case.  Plaintiff did not originally move for approval of a collective action because this Court required such a motion be filed before discovery.  Once this Court reconsidered its approach, acknowledging that moving for approval of a collective action is often more appropriate after the parties engage in discovery, plaintiff was diligent in pursuing a collective action.  The other requirement for equitable tolling, that "some extraordinary circumstance" must account for plaintiff's delay, Contrera, 278 F. Supp. 3d at 723, is also met: the extraordinary circumstance was an order from this Court that plaintiff could not move for approval of a collective action after the parties engaged in discovery.  Tolling the statute of limitations for opt-in plaintiffs from sixty days after plaintiff's motion for class certification became fully briefed properly accounts for the delays outside of plaintiff's control, and despite his diligence: the time it took for the Court to determine that plaintiff could properly move for approval of a collective action after discovery, and the time it took for the Court to decide this motion.

### C.  Method of Dissemination

Plaintiff requests dissemination of notice via mail, e-mail, and text message, with a reminder notice to follow within thirty days of the initial mailing via the same methods.  Plaintiff

---

[2] Sixty days is a reasonable amount of time that it should have taken the Court to rule on the motion.

has also requested that these notices and reminder notices be distributed in English, Spanish, and any other language defendants identify as the primary language of a putative opt-in plaintiff. Defendants request thirty days to negotiate an appropriate and adequate notice, after which period of time the parties can file proposed notice forms for the Court to consider.

Courts in this Circuit have consistently allowed plaintiffs to send out collective notice via electronic means, including e-mail and text message. See, e.g., Panora v. Deenora Corp, No. 19-cv-7267, 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020). In light of the fact that "[a]uthorizing notice via electronic means is practical and furthers the purpose of notice of a collective action under the FLSA," Hunter v. Next Level Burger Co., Inc., No. 23-cv-3483, 2024 WL 686929, at *4 (E.D.N.Y. Feb. 20, 2024) (quotation omitted), I will allow dissemination of the initial and reminder notices via e-mail and text message. Such "[r]eminder notices are appropriate given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt in." Valdez v. MichPat & Fam, LLC, No. 20-cv-2570, 2022 WL 950450, at *16 (E.D.N.Y. March 30, 2022), appeal withdrawn, 2022 WL 2677030 (2d Cir. April 29, 2022) (cleaned up).

Plaintiff's request that all notices be distributed in English, Spanish, or any other language defendants identify as the primary language of a putative opt-in plaintiff is also granted. Courts routinely "permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." See Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 76 (E.D.N.Y. 2016).

The Court adopts plaintiff's proposed collective action notice, opt-in form, collective action notice reminder, and proposed emails and text messages containing the same, as modified by this Court to only include superintendents and porters, and to include only those putative

collective members employed within three years of August 15, 2023.  As modified, the notice, opt-in form, and notice reminder are all appropriate and adequate, eliminating the need for the parties to negotiate an appropriate and adequate notice for thirty days, as defendants requested.

### D.  Production of Contact Information

Finally, plaintiff asks that the Court order defendants to produce, in a computer-readable format, the full names, addresses, phone numbers, email addresses, job titles, and primary languages "for all manual workers employed by [d]efendants at the Big City Buildings" during the relevant time period.  I agree with defendants that this request is overbroad insofar as it requests information for employees other than superintendents and porters.  Otherwise, defendants are required to disclose information necessary to facilitate providing notice to potential members of the collective by mail, e-mail, and text message.  Defendants shall disclose the full names, last known mailing addresses, phone numbers,[3] email addresses, job titles, and primary languages for all potential putative collective members to the extent they have that information.  The information need cover only those employed within three years of August 15, 2023.

### III.  <u>Rule 23(b)(3) Class Action</u>

To prevail on a certification motion, a plaintiff must demonstrate "by a preponderance of the evidence that each of Rule 23's requirements have been met."  <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010).  Rule 23(a) requires that a putative class action "(1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or

---

[3] Plaintiff may use these telephone numbers to send notice via text, but plaintiff may not initiate or follow up with potential opt-in plaintiffs via voice calls.

representatives who adequately represent the interests of the class." Id.  The Second Circuit has also recognized an implied fifth prerequisite: the class must be objectively ascertainable.  See In re Petrobas Sec. Lit., 862 F.3d 250, 260 (2d Cir. 2017).  On top of the Rule 23(a) requirements, parties seeking certification under Rule 23(b)(3) must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Compared to the requirement that members of an FLSA collective action be "similarly situated," Rule 23(b)(3)'s predominance requirement presents a "much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes." Scott, 954 F.3d at 518 (internal quotation marks and quotation omitted).  Given that plaintiff has failed to meet the lower "similarly situated" standard under the FLSA for handymen and manual workers other than superintendents and porters, plaintiff has likewise failed to meet the more stringent Rule 23(b)(3) requirement as to handymen and other manual workers.  The Court thus analyzes whether plaintiff has met the Rule 23 requirements to certify a class of superintendents and porters employed by defendants at the Big City Buildings.

### A. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "What matters to class certification is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers to drive the resolution of the litigation."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (cleaned up).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."  Zivkovic v. Laura Christy LLC, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).  "Named

[p]laintiffs can establish a common question by demonstrating that there is a common policy across [work sites operated by the same employer] that 'will produce answers that apply to all plaintiffs . . . and drive the resolution of this litigation.'" <u>Mangahas v. Eight Oranges Inc.</u>, No. 22-cv-4150, 2024 WL 2801922, at *7 (S.D.N.Y. May 31, 2024) (quotation omitted).

Here, plaintiff has demonstrated that defendants enacted common policies across buildings and allegedly injured all superintendents and porters in the same ways – by failing to pay overtime wages, failing to pay them weekly through March 2022, and providing them with incorrect or incomplete wage statements and notices. The putative class members' recovery against defendants, then, will largely turn on answers to the same questions: whether defendants' policies of failing to pay overtime and paying normal wage rates for overtime work, failing to pay employees weekly, and providing incorrect or incomplete wage statements and notices violate the NYLL. However, at least the first and third questions will not have common answers. Instead, they will depend on the application of a state defense, which will need to be determined on an individual basis as to each putative class member.

Whether defendants' policies violate the NYLL will depend on the application of the janitorial exemption to NYLL overtime and minimum wage requirements. Instead of receiving minimum wages and overtime pay, employees that are considered janitors are paid a weekly rate based on the number of units in the building(s) in which they work. N.Y. Comp. R. & Regs. tit. 12, § 141-1.2. Janitors are thus exempted from NYLL overtime pay and minimum wage requirements. <u>See</u> <u>Koljenovic v. Marx</u>, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014) (quotations omitted). Defendants do not violate the NYLL by failing to provide overtime pay to their employees who are janitors.

For purposes of the exemption, there can only be one janitor (defined as "a person employed to render any physical service in connection with the maintenance, care or operation of a residential building") per building.  N.Y. Comp. R. & Regs. tit. 12, § 141-3.4.  If there is only one employee for a residential building, he is the janitor.  Id.  If there is more than one employee for a building, but only one employee lives in the building, he is the janitor.  Koljenovic, 999 F. Supp. 2d at 400.  Otherwise, the employer must designate an employee to be the janitor.  N.Y. Comp. R. & Regs. tit. 12, § 141-3.4.

To answer whether defendants violated the NYLL by failing to pay overtime wages, the Court would have to determine, as to each putative class member, whether he is the only employee of a building; if not, whether he is the only employee who lives in the building; and if not, whether he has been designated by defendants to be the janitor for the building.  These are "exactly the question[s] that . . . would require fact-intensive inquiry into each potential plaintiff's employment status," and thus defeat commonality.  Myers v. Hertz Corp., No. 02-cv-4325, 2007 WL 2126264, at *4 (E.D.N.Y. July 24, 2007), aff'd, 624 F.3d 537 (2d Cir. 2010) (quotation marks omitted).  The individualized nature of the exemption analysis means that there will not be common answers to the question of whether defendants violated NYLL overtime pay requirements.  See Velasquez v. Digital Page, Inc., 303 F.R.D. 435, 442 (E.D.N.Y. 2014) (class "certification in exemption cases may be appropriate in cases where company wide documents and policies tended to show that plaintiffs' jobs were similar in ways material to the establishment of exemption criteria, but not where there are outstanding factual issues on whether the individual plaintiffs were exempt" (quoting Cuevas v. Citizens Fin. Grp., Inc., 526 F. App'x 19, 22 (2d Cir. 2013)) (internal quotation marks omitted)).

Even if plaintiff had standing to bring wage statement and notice claims, which he likely does not,[4] the janitorial exemption defeats commonality on those claims as well. The application of the exemption will determine whether defendants provided putative class members with accurate wage statements and notices. If employees are not entitled to overtime pay because they are subject to the janitorial exemption, then perhaps their wage statements omitting overtime hours and wage notices stating a regular wage rate for overtime hours *were* accurate, whereas the same statements and notices would be inaccurate for employees not subject to the janitorial exemption. Due to the individualized application of the exemption, there can be no common answer to these questions either.

**B. Typicality**

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). "'[M]inor variations in the fact patterns underlying individual claims' does not defeat typicality." Perez v. Allstate Ins. Co., No. 11-cv-1812, 2014 WL 4635745, at *17 (E.D.N.Y. Sept. 16, 2014) (quoting Robidoux, 987 F.2d at 937). However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (quotation omitted). "The Court need not resolve whether a unique defense would ultimately succeed on the merits; rather, certification must be refused if the Court is confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff." Bowling

---

[4] See Deng v. Frequency Elecs., Inc., No. 21-cv-6081, 2022 WL 16923999 (E.D.N.Y. Nov. 14, 2022).

v. Johnson & Johnson, No. 17-cv-3982, 2019 WL 1760162, at *4 (S.D.N.Y. April 22, 2019) (internal quotation marks and quotation omitted).

Here, it is "sufficiently clear" that the janitorial exemption applied to plaintiff starting in December 2021, about one month into his employment, when he began to reside at 3440 Broadway. At that point, it appears that plaintiff was the only employee that lived in the building for which he performed manual labor to maintain the building,[5] qualifying him as a janitor of 3440 Broadway. See Koljenovic, 999 F. Supp. 2d at 400.

It is less clear whether the janitorial exemption applied to plaintiff for his work performed at 3440 Broadway before he began living there, or for his work performed at any time at 3427 Broadway. See Koljenovic, 999 F. Supp. 2d at 402 (janitorial exemption does not defeat "claim for compensation for work performed in buildings other than those in which [plaintiffs] were the residential superintendents"). In those instances, plaintiff was not the only employee for a residential building, nor did he live in the building. Thus, defendants would have had to designate plaintiff as the janitor for the exemption to apply. N.Y. Comp. R. & Regs. tit. 12, § 141-3.4.

Even considering these potential carveouts from plaintiff's exemption from overtime payment, the janitorial exemption still likely defeats a substantial part of plaintiff's overtime claim. Plaintiff would not be able to make out a claim for overtime wages for any of his work performed at 3440 Broadway. And, further demonstrating that plaintiff's claims are not typical of the putative class, regardless of *how much* of plaintiff's work was subject to the janitorial exemption, defendants' liability to plaintiff for failure to pay overtime wages and for providing

---

[5] As of late November/early December 2021, Roberto Peguero, the porter for 3440 Broadway, lived at 633 West 152nd Street, another building owned by defendants, so Peguero would not have qualified for the janitorial exemption for his work at 3440 Broadway.

incorrect or incomplete wage statements and notices will turn on the applicability of the janitorial exemption, a fact-intensive inquiry unique to plaintiff.

Because the janitorial exemption likely defeats a substantial part of plaintiff's overtime claim, as well as his incorrect or incomplete wage statements and notices claims, and the exemption creates issues unique to plaintiff that "threaten to become the focus of the litigation," Baffa, 222 F.3d at 59, this Court finds that plaintiff cannot satisfy the typicality requirement necessary for class certification as to those claims.

### C. Predominance

To satisfy Rule 23(b)(3)'s predominance requirement, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In applying the predominance requirement, "courts often deny certification where common issues of law are not present or where resolving the claims for relief would require individualized inquiries." Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 339 (S.D.N.Y. 2004). Here, resolving the putative class claims for overtime wages and damages from incorrect or incomplete wage statements and notices will require individualized inquiries. To determine defendants' liability, this Court will have to decide, on an individual basis, the applicability of the janitorial exemption to each putative class member. The centrality of this inquiry far outweighs any common questions: without resolving whether the janitorial exemption applies to each individual putative class member, this Court cannot determine whether defendants owe them overtime wages under the NYLL.

Assuming, *arguendo*, that plaintiff's overtime, wage statement, and wage notice claims satisfy the numerosity, adequacy, and ascertainability requirements of Rule 23(a), plaintiff's

23

motion for class certification of these claims is nevertheless denied because they do not satisfy

the predominance requirement under Rule 23(b)(3), nor do they satisfy the commonality or

typicality requirements of Rule 23(a).

### D. Failure to Pay Weekly Wages Claim

Although employees who are considered janitors are exempted from NYLL overtime pay

and minimum wage requirements, the janitorial exemption does not impact plaintiff's claim that

he and the putative class members were not paid weekly pursuant to NYLL § 191(1)(a)(i).  Thus,

plaintiff's inability to satisfy the commonality, typicality, and predominance requirements for

class certification of his other claims does not apply to plaintiff's claim that defendants failed to

pay wages on a weekly basis until March 2022.

However, an important state law question remains undecided regarding plaintiff's weekly

wage claim.  New York state courts are divided on whether there is a private right of action to

seek liquidated damages for an employer's failure to pay timely wages pursuant to NYLL § 191.

Compare Vega v. CM & Assocs. Constr. Mgmt., LLC, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st

Dep't 2019) (finding a private right of action for a violation of NYLL § 191), with Grant v.

Glob. Aircraft Dispatch, Inc., 223 A.D.3d 712, 204 N.Y.S.3d 117 (2nd Dep't 2024) (finding no

private right of action for a violation of NYLL § 191).  The New York Court of Appeals has not

yet addressed this split.  An unopposed motion for leave to appeal this issue to the Court of

Appeals is currently pending in the Second Department.  Grant, Mot. for Leave to Appeal, No.

2021-03202 (2nd Dep't Feb. 15, 2024), NYSCEF No. 24.

This Court will stay proceedings as to plaintiff's NYLL § 191 claim pending disposition

of the motion for leave to appeal in Grant.  See Urena v. Sonder USA Inc., No. 22-cv-7736, 2024

WL 1333012, at *1 (S.D.N.Y. March 28, 2024) ("This Court has authority to stay proceedings

pending disposition of another case that could affect the outcome.").  In determining whether to

impose a stay, courts in the Second Circuit consider "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." Id. (quoting Loftus v. Signpost Inc., 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020)). Here, all factors favor a stay.

First, plaintiff only seeks liquidated damages on behalf of himself and the putative class for defendants' alleged failure to comply with NYLL § 191. Thus, although plaintiff "has a legitimate interest in the timely proceeding of this case," Pry v. Auto-Chlor Sys., LLC, No. 23-cv-4541, 2024 WL 3728981, at *2 (S.D.N.Y. Aug. 8, 2024), a "stay would not diminish any potential monetary damages that [plaintiff and the putative class] might recover," OV Loop, Inc. v. Mastercard Inc., No. 23-cv-1773, 2023 WL 7905690, at *7 (S.D.N.Y. Nov. 16, 2023). Furthermore, if this Court did not grant a stay, plaintiff "would be prejudiced by expending time and resources litigating a claim that may be rendered moot if the New York Court of Appeals considers the appeal in Grant." Urena, 2024 WL 1333012, at *2. Because of this prejudice and the fact that "monetary damages will be sufficient to compensate" plaintiff and the putative class, the first factor weighs in favor of a stay. Rovi Guides, Inc. v. Comcast Corp., No. 16-cv-9278, 2017 WL 4876305, at *5 (S.D.N.Y. Oct. 27, 2017) (quotation omitted); see also Urena, 2024 WL 1333012, at *2.

Second, the private interests of defendants favor a stay. If defendants are required to defend against plaintiff's NYLL § 191 claim, they, too, would have to spend time and resources defending against a class action lawsuit that the New York Court of Appeals may find plaintiff has no authority to bring. Staying proceedings as to plaintiff's NYLL § 191 claim poses no

burden to defendants: if the Court of Appeals recognizes a private right of action for plaintiff to bring this claim, defendants will have to defend against it then in the same manner it would have to defend against the claim now.

Third, the interests of the courts are served by staying proceedings regarding plaintiff's failure to pay weekly wages claim. Issuing a stay in this instance will conserve judicial resources and promote comity between the federal and state judiciaries. This Court has not yet considered the merits of plaintiff's NYLL § 191 claim, and the claim remains at an early stage of litigation. Allowing the New York Court of Appeals to determine this issue before this Court proceeds will ensure that the New York court system interprets New York state law, instead of this Court improperly imposing its own views.

For the same reasons that a stay will serve the interests of the courts, it will also serve the interests of persons not parties to this litigation and the public. The promotion of judicial efficiency and comity benefit more than just the courts. The public has an interest in the avoidance of cost and the respect of the federal judiciary for state judicial proceedings.

Given that these factors weigh in favor of staying proceedings as to plaintiff's NYLL § 191 claim until the New York Court of Appeals determines whether a private right of action exists, further proceedings as to this claim are hereby stayed pending the Court of Appeals' review in Grant v. Global Aircraft Dispatch, Inc., 223 A.D.3d 712, 204 N.Y.S.3d 117 (2nd Dep't 2024).

## CONCLUSION

Plaintiff's motion for court-facilitated notice of an FLSA collective action is granted to the extent set forth above. Plaintiff's motion for class certification is denied as to plaintiff's

overtime, wage statement, and wage notice claims, and proceedings as to plaintiff's NYLL weekly wage claim are stayed.

The Court further orders that:

- Within fourteen days of entry of this Order, defendants shall produce a computer-readable data file including the full names, last known mailing addresses, telephone numbers, email addresses, job titles, and primary languages for members of the putative collective;

- Plaintiff's proposed collective action notice, opt-in form, collective action notice reminder, and proposed emails and text messages containing the same are approved, subject to the modifications discussed in this Order; and

- Within thirty days after the entry of this Order, plaintiff shall cause a copy of the collective action notice and opt-in form, as modified by this Order, to be disseminated to the putative collective.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
       December 17, 2024