Rapaport Law Firm, PLLC | Attorneys at Law | 80 Eighth Avenue | Suite 206 | New York, NY 10011 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

June 30, 2025

**BY ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    **Juan Pineda v. Big City Realty Management, LLC**
               **Case No. 22-cv-05428(BMC)**

Dear Judge Cogan:

      Together with Miller Law, PLLC, this firm represents plaintiff, Juan Pineda ("Pineda" or "Plaintiff"), in the above-referenced matter, which involves claims for wage and hour violations arising from Plaintiff's employment as a superintendent. We write jointly with defendants Big City Realty Management, LLC, Big City Realty, LLC, CFF Consulting Inc., 3427 Broadway BCR, LLC, 3440 Broadway BCR, LLC, 3660 Broadway BCR, LLC, 633 West 152 BCR, LLC, 605 West 151 BCR, LLC, 545 Edgecombe BCR, LLC, 535-539 West 155 BCR, LLC, 408-412 Pineapple, LLC, 106-108 Convent BCR, LLC, 510-512 Yellow Apple, LLC, 513 Yellow Apple, LLC, 145 Pineapple LLC, 2363 ACP Pineapple, LLC, 580 St. Nicholas BCR, LLC, 603-607 West 139 BCR, LLC, 559 WEST 156 BCR, LLC, 3750 Broadway BCR, LLC, Kobi Zamir ("Zamir"), and Fernando Alfonso ("Alfonso"),[1] (collectively, "Defendants") to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. The fully-executed Agreement is submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiff's counsel further requests that the Court approve the request for attorneys' fees and costs.

      The Agreement reflects a desire by the parties to fully and finally settle Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. Plaintiff filed his Complaint on September 12, 2022 (Cmpl., ECF No. 1) and an Amended Complaint on November 11, 2024. Amended Cmpl., ECF No. 59. Defendants filed their Answer to the Amended Complaint on November 25, 2024. Answer, ECF No. 60. On April 14, 2023, Plaintiff moved for class certification pursuant to FRCP 23 (ECF No. 43). On July 28, 2023, the Court

---

[1] Zamir and Alfonso are referred to herein at the "Individual Defendants."

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

vacated an earlier order that denied Plaintiff's request to proceed with a motion for conditional certification. Thus, on August 3, 2023, Plaintiff moved for certification of an FLSA collective (ECF No. 52). On December 17, 2024, the Court (i) granted Plaintiff's motion for conditional certification pursuant to the FLSA; (ii) denied Plaintiff's motion seeking certification of a Rule 23 class as to Plaintiff's overtime, wage statement and wage notice claims; and (iii) stayed proceedings as to Plaintiff's untimely pay claim (ECF No. 62). Court-ordered notice was sent to the FLSA collective, and no additional individuals opted to join the action.

Prior to commencing trial preparation, the parties renewed their settlement efforts and reached a settlement in principle. Thereafter, the parties drafted and negotiated the terms of the Agreement. The parties had the information required to reach an informed compromise. Discovery in this case was extensive. The parties exchanged several hundred pages of records, and Plaintiff deposed the Individual Defendants. Defendants' document production included time and payroll records relating to Plaintiff, and to other superintendents who were selected by Plaintiffs' counsel. With this information, Plaintiff produced a detailed spreadsheet setting forth his week-by-week damages analysis. As explained in further detail below, the parties respectfully aver that the proposed Agreement is fair, reasonable, and equitable.

### I. Introduction.

As Plaintiff's claims arise, in part, under the FLSA, 29 U.S.C. §§ 201 *et seq.*, the Agreement must be approved by this Court. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted). As set forth below, the parties believe that the Agreement satisfies all of the foregoing factors.

### II. Summary of Plaintiff's Factual Allegations and Damage Calculations.

#### 1. Plaintiff's Overtime Claims.

Plaintiff was employed as the superintendent of Defendants' apartment buildings located at 3440 Broadway and 3427 Broadway in Manhattan (the "Buildings"). Plaintiff alleges that all of the corporate defendants herein nominally hold title to Defendants' buildings, which are controlled by the Individual Defendants who manage Defendants' buildings, including the Buildings where Plaintiff served as superintendent. Plaintiff alleges that the Individual Defendants had the status of his employers by virtue of the control they exercised over the Buildings' operations and Plaintiff's conditions of employment.

Plaintiff served as the Buildings' superintendent from in or about November 2021 to in or about July 29, 2022. Plaintiff alleges that he regularly worked 48 or more hours per week.

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

Plaintiff alleges that: (a) from November 2021 to March 2022: Defendants paid him the same hourly rate ($20/hr) for all hours worked, including those above 40 in any given workweek and (b) from April 2022 to July 2022: Defendants lowered Plaintiff's hourly rate to $16.25/hr. and paid him no overtime whatsoever for those hours worked above 40 in a given workweek. Therefore, Plaintiff's overtime claims almost entirely hinge on Plaintiff's allegation that he was not paid the premium "half-time" ($10.00) that he was entitled to receive for his overtime hours for the majority of his employment (i.e., from November 2021 to March 2022).

### 2. Plaintiff's Calculations of his Potential Overtime Damages.

Plaintiff asserts overtime claims under the FLSA and NYLL. Plaintiff calculated his best-case, estimated damages based on average workweeks of approximately forty-eight hours. If a trier of fact were to fully credit Plaintiff's allegations regarding the number of hours he worked each week (*i.e.*, 48 hours every week), Plaintiff could potentially recover: (a) for the period November 2021 to March 2022, unpaid overtime in the amount of $80 per week ($20.00 x .5 = $10  x 8 hrs. = $80.00); and (b) for the period April 2022 to July 2022, $195 per week ($16.25 x 1.5 = $24.38 x 8 hrs. = $195). Based on the foregoing, Plaintiff estimates that he could potentially recover $4,880 in unpaid overtime wages, excluding liquidated damages, for the 38 week period of his employment.

| **Period** | **Number of Weeks** | **Weekly Rate Owed** | **Total Overtime Owed** |
|---|---|---|---|
| Nov. 2021 – Mar. 2022 | 22 weeks | $80 | $1,760 |
| Apr. 2022 – Jul. 2022 | 16 weeks | $195 | $3,120 |
|  |  | *Total* | *$4,880* |

### 3. Wage Statement and Wage Notice Violations.

Plaintiff also asserts claims for statutory damages under the NYLL for Defendants' failure to provide accurate wage statements. Plaintiff alleges that Defendants failed to provide him with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3). Plaintiff alleges that under NYLL § 198(1-d), he is entitled to statutory damages of $250.00 per work week, up to a cap of $5,000.00. Plaintiff also asserts a claim for statutory damages for Defendants' failure to provide him with wage notices at the time of hiring, and upon changes to his salary. Plaintiff's wage notice and wage statement claims potentially add $10,000 to the value of his claims. The success of Plaintiff's wage statement and wage notice claims would largely hinge on whether Plaintiff establishes that these violations caused concrete injuries.

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

**4. Untimely Pay.**

The Amended Complaint's Third Cause of Action alleges that Defendants failed to comply with § 191(1)(a)(i) of the NYLL, which requires weekly payment of wages to manual workers. At the time that the Amended Complaint was filed, Plaintiff could have potentially recovered liquidated damages for the first week of each two-week pay period under *Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144 (1st Dep't 2019*). But see Grant v. Global Aircraft Dispatch, Inc*., 2024 N.Y. App. Div. LEXIS 180, *13 (2d Dept. Jan 17, 2024). Given the foregoing split between New York's First and Second Departments, Plaintiff's claim for untimely pay was potentially viable, but uncertain. This claim had the potential to add approximately $11,000 to Plaintiff's damages. However, in light of recent developments, it is very unlikely that Plaintiff's claim for untimely payment of wages would result in anything more than nominal damages. On May 9, 2025, Governor Hochul approved amendments to the NYLL that severely limit a manual worker's ability to recover damages for failure to receive wages on a weekly basis.

**III.    Defendants' Position.**

Defendants assert that Plaintiff is not entitled to any overtime pursuant to the New York Labor Law as janitors of residential buildings are exempt from overtime. 12 N.Y.C.C.R. § 141-1.4. As Plaintiff was the sole janitor in charge of the care and maintenance of the Buildings, he would be exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.C.R. § 141-3.4. Further, pursuant to the FLSA, Defendants would be able to take a credit for the reasonable value and fair cost for the lodging provided to Plaintiff.

Defendants dispute that Plaintiff was not properly paid overtime wages. Plaintiff was duly paid for all the hours he worked. Defendants further note that courts considering claims by janitors/superintendents have recognized the difficulty by plaintiffs to demonstrate that they actually worked overtime and/or the hours claimed. *See e.g.*, *Daniels v. 1710 Realty, LLC,* 2011 U.S. Dist. LEXIS 91902 (E.D.N.Y. Aug. 17, 2011). Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law.

With respect to wage notices and statements, Defendants contend as an affirmative defense that Plaintiff is not entitled to such statutory damages since Plaintiff was paid all compensation he was entitled to pursuant to law. Plaintiff's claim for untimely payment of wages under NYLL § 191 is without merit in light of recent amendments to the NYLL and controlling decisions from the Appellate Division.

**IV.    The Agreement is Fair and Reasonable.**

The parties were able to reach an agreement before incurring the costs and stress of trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiff could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

The Agreement represents a reasonable compromise. Adopting the most optimistic assessment of Plaintiff's possible recovery, Plaintiff's counsel estimates that if Plaintiff were deemed non-exempt under the NYLL, and if a trier of fact were to credit his claims regarding the number of hours he worked per week, Plaintiff could potentially recover $4,880 for unpaid overtime, not including liquidated (double) damages. He could also recover statutory interest of at least $1,285.11. Adding potential damages for untimely payment of wages ($11,000) and wage notice/statement damages ($10,000), Plaintiff's maximum recovery is approximately $32,045.11. However, these additional amounts are unlikely to be recovered because of the risks described above (particularly the risks posed by the janitor exemption and recovery of liquidated damages for frequency-of-pay claims).

Defendants have agreed to pay a total settlement sum of $19,850. After legal fees and costs, Plaintiff is receiving $7,642.64. Therefore, Plaintiff is recovering 100% of his unpaid overtime damages and 57% of his liquidated (double) damages. The compromise Plaintiff is making to reach a settlement has been established to be a reasonable one. *See, e.g., Santiago v. Agadjani*, 2024 U.S. Dist. LEXIS 186484, *10 (E.D.N.Y. Oct. 11, 2024) (collecting cases where judges have found recoveries of 13% and 15% to be reasonable).

**V.      Plaintiff's Counsel's Application for Attorneys' Fees.**

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See, Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiff's counsel represents Plaintiff on a contingent basis, pursuant to a retainer agreement that provides for attorneys' fees of one-third of the net recovery. A copy of Plaintiff's counsel's retainer agreement with Plaintiff is attached hereto as Exhibit 2. Rapaport Law Firm's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate and contemporaneous billing records attached hereto as Exhibit 3. Miller Law's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate and contemporaneous billing records attached hereto as Exhibit 4. Invoices/receipts for the expenses and costs incurred by Rapaport Law are attached hereto as Exhibit 5. Invoices/receipts for the expenses and costs incurred by Miller Law are attached hereto as Exhibit 6.

Contingency fees of one-third are routinely approved in this Circuit. *See Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015). Of the total amount ($12,207.36) payable to Plaintiff's counsel, $8,443.09 is for expenses (primarily consisting of filing fees, service of process, and deposition and transcript costs). The balance, $3,764.27, is for legal fees. The legal fees are thirty-three percent (33%) of

5

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

the net settlement (*i.e.*, 33% of $11,406.91 ($19,850 – 8,443.09) = $3,764.27). All of the requested expenses were necessary for the prosecution of Plaintiff's claims.

The percentage method is the preferred method in this Circuit; however, the lodestar method is used as a "cross-check" to ensure that the amount is not unreasonable. *Chen*, 2021 U.S. Dist. LEXIS 189942 *17-18 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) and (*Beckman v. Keybank*, N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (granting attorneys' fees where award was 6.3x the lodestar amount)).

The attached history bills (Exhibits 3 and 4) show a combined, total lodestar of $77,371 ($38,716 for Rapaport Law and $38,655 for Miller Law). The hourly rates set forth in the attached history bills are below the rates that have been approved by courts in the Eastern District in similar FLSA cases. *See Rubin v. HSBC Bank USA,* 763 F Supp 3d 233, 244 - 245 (E.D.N.Y. 2025) (approving hourly rates of $620 and $650 for partners and $125 for paralegals and law clerks), and the time expended on the matter was reasonable and necessary in prosecuting Plaintiff's claims.

The requested fees ($3,764.27) are *far less than* the total lodestar ($77,371). In order to secure a settlement for Plaintiff that avoids delay and risk for Plaintiff, Plaintiff's counsel has reduced their fee to a nominal amount, foregoing remuneration for hundreds of hours of time. This decision was made in light of potential risks of Plaintiff's case—including recent rulings interpreting the NYL's frequency-of-pay provisions, as well as amendments to the NYLL § 191. Plaintiff's counsel considered the dismissal of Plaintiff's NYLL untimely pay claim, which reduces Plaintiff's potential recovery by approximately $11,000. Plaintiff is receiving 100% of his unpaid overtime damages. A settlement at this juncture enables Plaintiff to avoid the potential delays, risks, and stress associated with trial. Plaintiff's counsel made the strategic decision to prioritize settlement, and sacrifice a large portion of their potential legal fees, rather than continue litigation and trial. Plaintiff was actively involved in making this decision, and he fully supports the proposed settlement.

The attorneys and staff at Rapaport Law Firm and Miller Law who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport**

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty-five years of experience litigating employment matters, including matters touching upon nearly every aspect of wage and hour law, on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney with the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. For approximately the past ten years, my law

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

practice has particularly focused on representing low-wage superintendents, porters, and other maintenance workers who are employed at apartment buildings in New York City.

### 2. Meredith R. Miller

Meredith R. Miller has served as Of Counsel to Rapaport Law for almost twenty years. Since 2006, she has been a member of the faculty at Touro University, Jacob D. Fuchsberg Law Center, where she teaches employment law, business organizations and contracts. She has served as co-counsel with Mr. Rapaport on many wage cases representing immigrant and low-wage workers, including cases that have culminated in seven-figure settlements.

### 3. Marcela Cabezas

Ms. Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment cases, Ms. Cabezas plays a crucial and effective role in our firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for our firm's Spanish-speaking clients.

### 4. Karina Gulfo

Karina Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial role in our firm's representation of Plaintiff. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm. In this matter, Ms. Gulfo served as a primary point of contact for Plaintiff. Ms. Gulfo has played the same, crucial role for our firm's Spanish-speaking clients in at least a dozen other FLSA matters, including collective and class action cases involving hundreds of workers. Prior to joining our firm, Ms. Gulfo worked as a paralegal for a law firm in Bronx County, providing support in both criminal and civil matters.

### 5. Samantha Bourdierd

Samantha Bourdierd has been a legal assistant at Rapaport Law Firm since February 2024. Ms. Bourdierd is fluent in Spanish, which has made her a valuable resource for Spanish-speaking clients.

7

Honorable Brian M. Cogan
United States District Judge
June 30, 2025

***

   We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

*/s/ Marc A. Rapaport*

Marc A. Rapaport

Encs. (Exhibits 1 – 6)

cc:  All Counsel of Record (*Via ECF only*)